# Adams's Appeal.

1. While it is true that manifest want of jurisdiction in equity may be
taken advantage of at any stage of the cause, the Court will not per-
mit an objection to its jurisdiction to prevail in doubtful cases, after the
parties have voluntarily proceeded to a hearing on the merits, but will
administer suitable relief.

2. If the Court in which the suit is brought has jurisdiction of the cause
of action, both at law and in equity, it may proceed to give relief, un-
less the bill be demurred to on the ground that the proper remedy is at
law.

3. Under the Act of October 13th, 1840, P. L., 7, courts of equity have
concurrent jurisdiction with courts of law in all cases where an action
of account render would lie.

4. Whether a court of equity has jurisdiction or not must be determined
not by what may have been shown by the answer or testimony ad-
duced in support thereof, but by what appears on the face of the bill
itself.

5. A patentee who has granted to another a license to manufacture his
patented machine for a certain royalty per machine, may maintain an

3 AMERMAN—29

action of account render against his licensee, who refuses to account, or under the Act of 1840, he may file a bill in equity for an account.

6. Where a licensee agrees to pay royalties to the patentee annually for machines sold, he is not liable to account for the same until the expiration of the year. The Statute of Limitations does not, therefore, begin to run against the patentee's claim for royalties from the date of the sale of the machine, but only from the date of the expiration of the year in which they were sold.

May 7th, 1886. Before Mercur, C. J., Gordon, Paxson, Sterrett, Green and Clark, JJ. Trunkey, J., absent.

Appeal from the Court of Common Pleas of *Cumberland county :* In Equity : Of July Term 1886.

This was an appeal by David E. Adams, administrator of James D. Willoughby, deceased, from a decree of said Court dismissing his bill in equity, wherein Frank Gardner and George S. Beetem, surviving partners of the late firm of F. Gardner & Co., were defendants.

The bill was filed on the 30th of December, 1882. It set forth substantially that James D. Willoughby, prior to 26th of January, 1858, was the original inventor of new and useful improvements in the construction of seed planters ; that letters patent were on that day issued to him, that these were extended for a period of seven years from and after the 26th of January, 1872, and that he was the sole and exclusive owner of the entire right, title and interest in them during the extended term. That a short time after the date of the extension, Willoughby, at the request of F. Gardner & Co., gave them a parol license to manufacture and sell the seed planters (commonly known as grain drills), they to render him annually an account or statement of the number manufactured and pay him a royalty of five dollars for each seed planter manufactured by them ; that no account was rendered by defendants to Willoughby in his lifetime, nor to the plaintiff since his death, therefore he claims equitable relief, and asks that an account be taken under the direction of the Court, of the number of seed planters manufactured in pursuance of said parol license from the 26th of January, 1872, to the expiration of the term of the extended letters patent, and of all moneys owing by F. Gardner & Co. for royalty under the parol license.

The defendants answered, denying that they agreed in consideration of a parol license to manufacture seed planters, to pay a royalty of five dollars for each seed planter, but claim that they manufactured by virtue of certain correspondence set out in their answer, which showed that Willoughby had received from them and others amounts in excess of what he was ever entitled to ask or receive from them on this account. They also answered that they had never declined to give the

number of drills they had manufactured, and stated that in answer to a bill in equity, filed by Willoughby in his lifetime in the Circuit Court of the United States, they set forth the full number of the drills they had made, and reported the same in their present answer. That the bill filed by Willoughby in the Circuit Court of the United States was one for an infringement of his patent rights, in which he asked for an account of the profits made by them, and that this was dismissed without prejudice to his right to proceed elsewhere. They also answered that the complainant in this case has a full and adequate remedy at law against them, and that the conduct of Willoughby in his lifetime, and his oaths in contradiction of the facts alleged in the present bill, do not entitle his administrator to any relief in a court of equity.

Issue was joined, and A. B. Sharpe, Esq., was appointed Examiner and Master, who reported the following facts from the evidence taken in the case:

1. That shortly after the extension of the letters patent to James D. Willoughby he gave the defendants a parol license to manufacture and sell seed planters.

2. That they began to manufacture and sell them in the year 1872—and continued to do so, on down to the expiration of the extended and re-issued letters patent on the 26th of January, 1879.

3. That in the year 1873 they made and sold 108 drills; 1874, 135; 1875, 113; 1876, 105; 1877, 138; 1878, 90.

4. That in the year 1874 Willoughby wrote to the defendants for a report of the drills sold from the 26th of January, 1872, claiming a royalty of five dollars on all drills sold since that date; and they, on the 23d of May and 27th of June, recognized his claim, and agreed to pay five dollars royalty on each drill made and sold by them after the year 1872, but demurred to the payment for that year because they considered that their deed prior to the extension of the letters patent covered the year 1872.

5. That on the 27th of June, 1874, they paid Willoughby five hundred dollars on account of 108 drills they made and sold in the year 1873, and promised to send the balance due him as soon as they possibly could, but they have never since paid anything.

6. The royalty of five dollars on each drill was to be paid annually, and all sums due for drills made prior to the year 1877 are barred by the Statute of Limitations, but the defendants are indebted in the sum of six hundred and ninety ($690) dollars with interest from the 1st day of January, 1878, to the plaintiff for 138 drills made and sold in the year 1877 and in the sum of four hundred and fifty ($450) dollars for

90 drills made and sold in the year 1878, with interest thereon from the 1st day of January, 1879.

The law arising from the findings, or the Master's conclusions of law from the facts found are,—

1. The statute bars all of the claim of the plaintiff due six years before bill filed. It has long been held that in relation to the lapse of time, equity follows the analogy of the Statute of Limitations.

2. The defendants are not exempt by the Statute of Limitations from payment for the drills made and sold in the years 1877–78.

3. A court of equity has jurisdiction in this case.

4. A decree should be entered against the defendants, and in favor of the plaintiff in the sum of $1,599.43.

To this report both the plaintiff and the defendants filed exceptions. The defendants' exceptions were, *inter alia*, as follows:

9. The Master erred, in not finding that the plaintff had an adequate remedy at law, if he was entitled to any remedy.

The court, SADLER, P. J., sustained this exception, filing *inter alia*, the following opinion:

There is no allegation in the bill that the accounts between the parties were mutual or complicated. No fiduciary relation is alleged to exist. Nor did the testimony taken before the Master establish complication or mutuality of accounts or any trust relation. The complaint as charged and proven was a mere breach on part of the defendants to pay a royalty of five dollars on each seed planter manufactured by them, and the bill was filed to compel the payment thereof. The Master multiplied the number which defendants stated they had manufactured in 1877 and 1878 by five, and this was the extent of the labor incumbent upon him in settling the accounts between the parties. Surely this is no such an accounting as requires the interposition of a Court sitting in equity. Full, adequate and complete redress would have been afforded in an action in assumpsit.

"Where the transaction is of such a nature as renders the calling in of auditors altogether unnecessary, assumpsit, and not account-render is the proper form of action:" Brubaker *v.* Robinson, 3 P. & W., 297.

"If the account is one which might be readily investigated by a jury, the necessity for equitable interference does not exist, and it seems in that case no equity will arise:" Adams' Equity, § 226.

"When accounts are all on one side and no discovery is sought, equity will not entertain jurisdiction:" 2 Norris, 441.

The accounts must be mutual, that is, the two parties must

[Adams's Appeal.]

have received and paid on account of each other to justify a suit in equity for an accounting: 3 Pomeroy's Equity, 472.

In Grubb's Appeal, 9 Norris, 228, where a Court in equity was asked to decree an account to charge defendant for a certain number of tons of ore mined by him, the Court say, the "account is a mere matter of charge for a certain number of tons of ore, with no entries on the other side of the account." It was clearly the subject of an action at law, and the appropriate form of action is assumpsit. The growing disposition on part of the bar to file bills when jurisdiction is doubtful is also deprecated.

In the appeal of the P. & C. R. R. Co., reported in 3 Out., 177, the reasons for sustaining the bill seem much stronger than in the present case. The defendant there refused to account for the proportion of the receipts of a telegraph line, and the bill which was filed and sustained in the Court below was dismissed in the Supreme Court.

It is not controverted that if equity attaches for one purpose it may settle the whole controversy, but it must properly attach, and the primary inquiry is whether it has properly attached for any complaint stated in the bill or proven by the testimony offered in its support. It has not so attached in the present case.

That objection to the jurisdiction may be made in the answer, is provided for in Equity Rules, No. 7, which has been recognized and approved by Judge SHARSWOOD, in Underwood v. Warner, 3 Phila., 414. Besides, objection to the jurisdiction in equity may be taken on final hearing: Wiser's Appeal, 9 W. N. C., 508.

It is also to be observed that no certificate of counsel, which by the Act of 13th October, 1840, was required, has been annexed to the bill. The fact that the complainant may have the Statute of Limitations interposed to any attempt he may hereafter make to recover, in an action at law, has led us to arrive at these conclusions with reluctance, but to determine otherwise than that the plaintiff had a full, complete and adequate remedy at law, might be to disregard what we conceive to be the well considered, long standing, and unquestioned adjudications of our Court of highest resort.

The costs in this case, under all circumstances, should be paid by the defendants.

And now, 10th April, 1885, the ninth exception filed by the defendants to the report of the Master is sustained, the bill is dismissed, and the costs to be paid by the defendants.

The plaintiff thereupon took this appeal, assigning for error the following:

2. The Court below erred in that part of their opinion

wherein they say: "It is not controverted that if equity attaches for one purpose it may settle the whole controversy, but it must properly attach, and the primary inquiry is whether it has properly attached for any complaint stated in the bill or proven by the testimony offered in its support. It has not so attached in the present case."

3. The Court below erred in holding that the bill filed could not be maintained, and in dismissing the same and sustaining the ninth exception filed by the defendants to the report of the Master.

*Hepburn, Jr.* (*L. A. Johnston* and —— *Stuart* with him), for appellants.—At the time of the filing of the bill, we submit, we had a perfect case in equity, because,—

1. The statute expressly provides that the courts shall have "the powers and jurisdiction of courts of chancery in settling . . . . . such accounts and claims as by the common law and usages of this Commonwealth have been settled by the action of account-render," and the plaintiff may "proceed *either* by bill in chancery, or at common law:" Act 13th October, 1840, § 19, Br. Purd., ed. 1885, p. 692.

Here account-render would lie. True, the certificate was not filed with the bill. The defendants appeared. An answer and replication were put in, a Master appointed, the case fully heard on its merits, report made, exceptions taken before the Master, argued before him, and afterwards before the Court, and no reference made to the want of a certificate.

In disposing of the exceptions the Court referred to the fact that no certificate was attached to the bill, but the case was not disposed of on this ground. Since that, by leave of Court, the certificate has been filed, *nunc pro tunc*.

2. Independently of the Act of 13th of October, 1840, the equity powers conferred by the Act of 13th of June, 1840, § 39, extend the jurisdiction "to all cases over which courts of chancery entertain jurisdiction on the grounds of fraud, accident, mistake or account."

Courts of chancery always entertained jurisdiction of the accounts of trustees and agents: Snell's Equity, 438; Pomeroy's Equity, 473, n. 1; Bispham's Equity, 484.

The bill discloses, and the answer admits an *agency*—a fiduciary relation, a trust.

From the very character of the agency, as described by the bill, shown by the evidence, and found by the Master, the exact liability of the defendants could only appear on a discovery by defendants. The evidence showing the liability was wholly within the knowledge and control of defendants.

The jurisdiction of equity attached by reason of the facts

shown, not upon the manner in which the facts are stated. When facts are stated in the bill which show that a defendant is an agent; that the agency is such that the entire control of the property, business and profits must necessarily be in the defendants; and that no knowledge can come to the plaintiff, but from the defendants, equity has jurisdiction.

If these facts appear, does it matter in what order, or in what words they are stated?

*Hays* (*Henderson* with him), for appellees.—An action of assumpsit, declaring for the number of drills made each year, as set forth in the answer filed in the United States Circuit Court case, with the price per drill, would have afforded a perfectly adequate remedy. The answer filed in that case would have been evidence against the defendants as to the number of drills made. The plaintiff could have called the defendants and ascertained the number, or he could have required the production of their books. The letters relied upon could have been offered to show the price per drill. Such a case would be free from all complications and would afford a perfect remedy.

"A court of equity will not interfere to redress any injury for which there is an ample remedy at law:" Gallagher *v.* Fayette Co. R. R., 2 Wright, 102; Strasburg R. R. *v.* Echternacht, 9 Harris, 220; Kauffman's Appeal, 5 P. F. S., 383; Koch & Balliet's Appeal, 9 W. N. C., 341; Bank *v.* Adams, 1 Parsons, 534.

"Where the accounts are all on one side, courts of equity will decline taking jurisdiction of the case:" Gloninger *v.* Hazzard, 6 Wright, 390; Passyunk Building Association's Appeal, 2 Norris, 441; Grubb's Appeal, 9 Id., 228; Pittsburg & Connellsville R. R. Appeal, 3 Out., 177.

Mr. Justice STERRETT delivered the opinion of the Court, October 4th, 1886.

The main question, presented by the second and third specifications, is whether the learned judge erred in dismissing appellant's bill for want of jurisdiction. This question should be determined not by what may have been shown by the answer or testimony, adduced in support thereof, but by what appears on the face of the bill itself. If the averments therein contained, assuming them to be true, present a case of which equity has either concurrent or exclusive jurisdiction, the bill should not have been dismissed, especially in view of the fact that the appellees did not object, *in limine*, by plea or otherwise, to the jurisdiction of the Court. While it is true that manifest want of jurisdiction may be taken advantage of at

any stage of the cause, the Court will not permit an objection to its jurisdiction to prevail, in doubtful cases, after the parties have voluntarily proceeded to a hearing on the merits, but will administer suitable relief: Story's Eq. Jur., § 464. As was said in Sunbury & Erie R. R. Co. *v.* Cooper, 9 Casey, 278, if the Court in which the suit is brought has jurisdiction of the cause of action, both at law and in equity, it may proceed to give relief, unless the bill be demurred to on the ground that the proper remedy is at law.

After averring that in January, 1878, letters patent were issued by the United States to James D. Willoughby, his intestate, for " new and useful improvements in the construction of seed planters, . . . . . granting him, his heirs, administrators and assigns the exclusive right of making, using and vending to others to be used the said invention," for the term of fourteen years, plaintiff further averred in substance that said letters patent were legally extended for the further term of seven years from January 26th, 1872; that shortly after said last mentioned date, Willoughby, the patentee, gave defendants' firm, F. Gardner & Co., a parol license or permission to manufacture and sell the improvements covered by the extended letters patent during the term thereof; in consideration of which they promised and agreed to render to the patentee, annually, an account or statement of the number of said seed planters manufactured by them each year during said extended term, and pay him therefor a royalty of five dollars for each seed planter so manufactured by them; that in pursuance of said parol license or permission, defendants' firm manufactured and sold said seed planters (commonly known as grain drills), during the whole of said extended term of seven years; that no account was ever rendered by defendants to plaintiff's intestate of the number of seed planters manufactured by them under said parol license, except for the year 1873, although they did from time to time make small payments to him on account, amounting in all to $1,100; that since the death of Willougby, the patentee, in July, 1882, plaintiff as administrator of his estate has demanded of them an account and payment of the balance due the estate, and they have refused to furnish the same; that the only knowledge plaintiff has of the transactions between Willoughby and defendants is what he has learned from the papers and correspondence of Willoughby which have come to his hands as administrator, and praying that an account may be taken of the number of seed planters manufactured by defendants' firm, F. Gardner & Co., under said parol license, until the expiration of said extended letters patent, and of moneys owing by them to decedent's estate for royalty under the parol li-

cense, and of all moneys paid by defendants' firm to Willoughby in his lifetime ; that they may be decreed to pay complainant the balance that may appear to be due and owing, &c., and for such other and further relief as to the Court shall seem meet and the nature of the case require.

The facts thus averred and the relief prayed for, necessarily involved an account of the grain drills manufactured and sold by defendants' firm in pursuance of the contract; and there appears to be no good reason why that relief cannot be better administered by a court of equity than in a court of law. The means of knowledge necessary to a correct statement of the account was almost entirely within the control of defendants, and it was only by a discovery on their part that it could be made available to plaintiff.

The patentee had an exclusive property in the letters patent, and doubtless the object of his agreement with defendants' firm was to derive revenue therefrom by the sale of individual rights in connection with the drills manufactured and sold by them. To that end they agreed to render an account to him, periodically, of the number so manufactured and sold. While the agreement did not in terms create the ordinary relation of principal and agent, or factor, it did establish a relation of trust and confidence that is substantially the same. The patentee was dependent on defendants for a just and correct account of the individual rights disposed of by them in pursuance of the contract. Without such account it was next to impossible for him to ascertain how many such rights had been sold, and consequently how much was due and owing by defendants. In view of the express agreement to account, in connection with other facts averred in the bill, creating between the parties a relation of trust and confidence in regard to the letters patent, we think a case is presented in which an action of account render, on the common law side of the court, could have been maintained. If so, equity has concurrent jurisdiction under the Act of 1840, which invested Courts of Common Pleas with " all the powers and jurisdiction of Courts of Chancery in settling partnership accounts, and such other accounts and claims as by the common law usages of this Commonwealth have heretofore been settled by an action of account render ; " and provides that " it shall be in the power of the party desirous to commence such action to proceed either by bill in chancery or at common law ": Purd., 591, pl. 4.

It has been suggested that defendants' answer to the bill, filed in the Circuit Court of the United States, containing statement of grain drills sold by them from 1872 to 1878 inclusive, was in effect an account stated, and hence it was

unnecessary for plaintiff to resort to a bill in equity for the purposes of discovery and stating an account. The answer to this is that full discovery, such as plaintiff was entitled to, was not contained in the answer referred to ; and moreover, the plaintiff was not bound to accept the statement as correct. He had a right to demand production of defendants' books, and, by examination of defendants themselves, elicit such facts as were peculiarly within their knowledge in relation to the number of drills manufactured in pursuance of the contract. The fact that he subsequently waived that right and agreed to accept as correct the admissions contained in the answer referred to, could not oust the jurisdiction of the Court below.

For these and other reasons that might be suggested we think the learned judge erred in the matters complained of in the second and third specifications, and especially in dismissing the bill for want of jurisdiction.

The subject of complaint in the first specification is the refusal of the Court to sustain plaintiff's first exception to the Master's report, viz. : The Master erred in holding that " all sums due for drills, made prior to the year 1877, are barred by the Statute of Limitations." The effect of this ruling was to preclude recovery for 105 drills sold by defendants in 1876. According to the Master's finding it was the duty of defendants to account on the first of January in each year for all drills sold during the preceding year. They were not liable therefore to account and pay for the 106 drills in question until January 1st, 1877, which is within the six years prior to filing the bill. The legal conclusion of the learned Master was not warranted by the facts as he found them, and hence the exception was well taken. It follows, therefore, that the price of these drills, with interest, should be added to the amount specified in the decree recommended by the Master, thus making $2,380.71, with interest from February 19th, 1885.

> Decree reversed, and it is now adjudged and decreed that F. Gardner and George S. Beetem, surviving partners of the late firm of F. Gardner & Co., appellees, pay to David E. Adams, administrator of James D. Willoughby deceased, appellant, the sum of two thousand three hundred and eighty dollars and seventy-one cents, with interest from February 19th, 1885, and costs, including the costs of this appeal.