# Appeal of The Brush Electric Co. et al.

Equitable jurisdiction does not depend on the want of a common law remedy, for, while there may be such a remedy, it may be inadequate to meet all the requirements of a given case, or to effect complete justice between the contending parties. A bill may be sustained solely on the ground that it is the most convenient remedy. The exercise of chancery powers must often depend on the sound discretion of the court.

114    574
f 31 SC 526

114    574
e 33 SC 320

114    574
f224    420

114    574
226    567
f39SC 378

November 4th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas, No. 2, of *Allegheny county*: Of October Term, 1886, No. 157.

Appeal of the Brush Electric Light Company and John E. Ridall from a decree of said court, dismissing a bill in equity, where they were plaintiffs and the Allegheny County Light Company was defendant.

The defendant filed an answer to the plaintiffs' bill upon which issue was joined. Thomas Herriott, Esq., was appointed Master in the case. He made the following report, from which the facts of the case appear:—

The Brush Electric Company, one of the plaintiffs, is a corporation of the state of Ohio, and has its main office in the city of Cleveland, Ohio. This company owns or controls what are known as the Brush patents for electric arc lighting, and Messrs. Ridall and Ingold were the agents for the county of Allegheny, Pennsylvania.

In the year 1881, the Allegheny County Light Company was about to engage in furnishing electric light to parties desiring it, in the cities of Pittsburgh and Allegheny; and, after some negotiations, an article of agreement dated the    day of         1881, was executed, wherein the Brush Electric Company was the party of the first part, John E. Ridall and Eugene Ingold, partners, the parties of the second part, and the Allegheny County Light Company the party of the third part.

This agreement provides, among other things, that the "said parties of the first and second parts hereby give and grant to the said party of the third part the exclusive right, license and privilege, within and throughout the said cities of Pittsburgh and Allegheny, but not elsewhere, of leasing or furnishing for use, by or under a contract or agreement of lease with persons desiring to use the same lights, such as the apparatus made by the said party of the first part is designed or adapted to give."

The parties continued to deal under this agreement until the early part of the year 1883, when some disputes arose, and they attempted to make another agreement.

The Allegheny County Light Company claimed among other things that it was and had been paying too much for the apparatus furnished it by the other parties to the agreement of 1881.

Jno. E. Ridall, one of the plaintiffs, was during all this time one of the directors of the Allegheny County Light Company and its secretary; a new secretary was afterward elected, but Mr. Ridall is still one of the directors.

On the third of February 1883, the secretary of the Brush

Company, Wm. F. Swift, came to Pittsburgh and met the directors of the Allegheny County Light Company and the differences between the parties were discussed in a friendly way for several hours and it was thought that a new agree-. ment was made. The following was then drawn up by George T. Oliver, one of the directors of the defendant company, and adopted by its directors:—

"Moved that the officers of this board enter into a new contract with Ridall and Ingold, agents, and the Brush Electric Company, providing that on all future purchases of all kinds, a discount of ten per cent. or such higher rate as is allowed to other lighting companies, purchasing from agents, be allowed this company; and that a rebate of ten per cent., in cash or stock, be allowed on all purchases of apparatus heretofore made, on condition that this company agrees to purchase or use no other arc light except that provided by the Brush Electric Company; it being understood that the discount above stated is only to be allowed on apparatus and does not include storage batteries and incandescent lamps."

"Adopted."

When this resolution was adopted, both Mr. Ridall and Wm. F. Swift were present and, as secretary of the defendant, Mr. Ridall transcribed it on the minute book.

After this meeting a blank agreement was sent to Pittsburgh by the Brush Company, but this not being satisfactory to the Allegheny County Light Company, its attorney drew a new agreement and this was sent to Cleveland, but was changed in many particulars by the officers of the Brush Company and returned to Pittsburgh.

The correspondence between the Brush Company and the Allegheny County Company was, on the part of the Allegheny County Company, all conducted by Mr. Ridall, its secretary; the contract, as changed by the Brush Company, was presented by him at a meeting of the board of directors of the defendant company, and the attention of the directors was called to the fact that the Brush Company had not returned sufficient stock to pay the rebate of ten per cent. on past purchases of apparatus. There is no testimony as to any reference being made to the changes made by the officers of the Brush Company in the contract sent to them.

The new contract was not executed by the Allegheny County Light Company at this meeting, but was laid aside until the balance of the stock was returned by the Brush Company. The stock being received, Mr. Ridall then told Mr. H. H. Westinghouse, the president of the defendant, that the contract was all right, and on behalf of his company, he, Mr. Westinghouse, executed it.

This contract was accessible to the directors of the defen-
dant company, but it does not seem that any of them, except
Mr. Ridall, ever read it before it was executed.

The parties continued to deal with each other for about a
year, when, at a meeting of the directors of the defendant,
held in March, 1884, the question of the price of carbons was
raised; some members claimed they could be bought cheaper
than the Brush Company was selling them.   Mr. Ridall claim-
ed that the defendant was bound to buy its carbons through
him from the Brush Company; and, it seems, then for the
first time it was discovered that there was a difference between
the resolution of February 3d, 1883, and the contract of March
31st, 1883.   The resolution did not expressly authorize the
officers of the defendant to buy its carbons from the Brush
Company, while the contract, as signed, did obligate the
defendant to do so; hence this dispute.

In May, 1885, the parties to this cause agreed to submit all
matters in controversy, arising out of the agreement of March
31st, 1883, to Wm. Bakewell, as referee, but before his award
was made the defendant revoked the submission.   I do not
think this has anything to do with the merits of the cause,
except as to the question of costs.

After the defendant had thus revoked the submission to Mr.
Bakewell, the plaintiffs in this case file their bill, in which
they allege, among other things, the making of the contract of
1881 and the subsequent contract of March 31st, 1883; that
the defendant is bound by said contracts to buy all its appar-
atus and carbons from the plaintiffs, and allege that it has not
done so, but has itself engaged in constructing apparatus and
has bought its carbons from others than the plaintiffs, and
intends to continue so doing.   The bill then prays that specific
performance of the said contracts may be enforced, and an
account, and that discovery may be made by the defendant of
the amount of carbons, arc lights or apparatus bought by it
from others than the plaintiffs, and also of all commutators,
apparatus, machinery or accessories, or definite parts thereof,
made by it or by others than the Brush Electric Company.
The defendant, in its answer, admits the making of the agree-
ment of 1881, but claims that it was induced to sign the agree-
ment by misrepresentations of the plaintiffs; it denies that it
is making any apparatus or machinery described in that agree-
ment.   The answer also alleges that having discovered the
alleged misrepresentations of the plaintiffs, which induced the
signing of the agreement of 1881, and that the prices charged
under this agreement were unfair, the defendant proposed to
discontinue all further purchases from the Brush Company or
its agents.

4 AMERMAN—37

That after this the directors of the defendant and the secretary of the Brush Company met on February 3d, 1883, when the differences were discussed and the resolution of February 3d, 1883, above quoted, was adopted by the directors of the defendant and was approved by Mr. Ridall and Mr. Ingold, who were both directors of defendant and agents of the Brush Company, and was also approved by Mr. Swift, the secretary of the Brush Company.

That the contract of March 31st, 1883, was not drawn pursuant to the resolution of February 3d, 1883, but without any authority the word "carbons" was inserted in it, and that this change was not known to any officer or director of defendant, except Mr. Ridall, until some time in 1884; that said Ridall was business manager of the defendant and undertook to have the agreement prepared in accordance with the resolution, but did not do so, and that as soon as any of the officers of the defendant learned the terms of the contract the defendant refused to respect or be bound by said last mentioned agreement. The defendant also claims that the bill does not disclose any ground of equitable relief.

The testimony of the plaintiffs does not show that the defendant bought any new machinery from other than the plaintiffs; it does show, however, that when parts of the machinery bought from the plaintiffs would wear out the defendant would make these parts and fit them in the old machinery; this was the case with parts of the lamps that would burn out, these would be taken out, filed up and replaced, also parts of the commutators would wear out or burn out; the burnt-out wires would be replaced, and other parts that were worn out would be replaced when unfit for use.

In Wilson v. Simpson, 9 How., 109, the difference between repairs and reconstruction is discussed, and the repairs in this case clearly come within the rule there laid down.

Besides, Mr. Ridall knew that this work was done by the defendant and never made any objection to it, and had similar work done for himself in his own private business.

There is not sufficient in this branch of the plaintiffs' case to justify any decree.

The execution of the contract of March 31st, 1883, is admitted, and all the testimony offered by the defendant, in relation thereto, is objected to as incompetent and irrelevant. The Master, however, thinks that if the defendant can prove the matters alleged in the answer, in regard to the making and signing of this contract, it has a clear right to do so.

If the parties came to a new agreement on February 3d, 1883, the resolution of that date does not express it.

Mr. Ridall says this resolution might include carbons, but he does not think "carbons" are included in "apparatus." Mr. Swift, and also Mr. Caldwell, understood the resolution to include carbons, while Mr. Oliver and others of the defendant company were just as positive that carbons were not included in what the defendant was obliged to buy from the plaintiffs.

The defendant also was to receive a discount of ten per cent. on all purchases of apparatus heretofore made, and in computing the amount due for this rebate it does not seem to have suggested itself to any one that carbons were included, at least the Brush Company did not include a rebate on carbons, and the defendant did not ask it.

The master is therefore of the opinion that the plaintiffs thought that defendant had agreed to buy carbons exclusively from them, and that the defendant's officers, with one exception, did not think so, and further, that, in the light of the rebate allowed at the time on past purchases as well as the words of the resolution, the word "apparatus" does not include carbons. It follows, therefore, that at a meeting of February 3d, 1883, the parties never came to any common understanding, and there was no contract then made between them.

The further question remains, is the agreement of March 31st, 1883, binding on the defendant?

It is based on the resolution of February 3d, 1883, at least the plaintiffs knew the extent to which that resolution authorized the defendant's officers to bind it.

The secretary of the Brush company was present when it was adopted and knew its contents, and Mr. Ridall was secretary of the defendant and transcribed it on the minutes; a contract is then prepared by defendant's attorney which does not include, among the things to be bought from the plaintiffs, carbons. This contract is sent by Mr. Ridall to the Brush company; it is changed by the president and secretary of the Brush company so that it will include carbons, and returned to Mr. Ridall. He, very properly, lays it before the defendant's directors and reports that the Brush company has not returned enough stock to pay the rebate agreed upon.

There is no evidence that he had any notice or knew of the change made in the contract in regard to carbons, nor did any other officer of the defendant know of this until March, 1884.

In March, 1883, Mr. Ridall occupied the relation of agent for the Brush company, and was also a director and secretary of the defendant. If he knew of the change made by the Brush company and then told Mr. Westinghouse that the contract was all right, he was false to his duties to the defendant; while if he did not know of it, when it was his duty to see

that it was drawn in accordance with the resolution, it would not be strange if the other officers of the defendant did not discover it, especially when this branch of the business was attended to by Mr. Ridall.

The Master, therefore, thinks that the officers of defendant did not intend to bind the defendant in the manner claimed, and that the contract of March 31st, 1883, is not such a contract as, signed in this peculiar way, a court of equity should enforce by injunction.

It is well known that in equity practice it requires a much stronger case to enforce specific performance than to resist it, and that specific performance is not a matter of absolute right to either party, but is the subject of a sound discretion: Willard *v.* Taylor, 8 Wall., 565; Dalzell *v.* Crawford, 1 Par., 37.

It is also well settled that the court will not decree specific performance in cases of fraud or mistake: see Eastman *v.* Plumer, 46 N. H., 464, and in many other cases when it would be against the conscience of the court.

In this case the contract of March 31st, 1883, was executed by the defendant's officers without any authority, and this lack of authority was known to the plaintiffs, to Mr. Ridall as defendant's secretary, and to Mr. Swift the secretary of the Brush company, which is notice to the company itself; the contract was disavowed by the defendants as soon as it knew its true character.

The defendant, however, has received from the Brush company fifty-five hundred dollars of stock as part of the consideration of the agreement of March 31st, 1883; this stock it certainly has no right to hold and still refuse to abide by the agreement. It has made no offer to return the stock to the Brush company, neither has any demand been made for it by the Brush company; as no special injury has been shown to have been caused by this delay in returning the stock, the Master is of the opinion that if it is returned to the Brush company this bill should be dismissed.

It is strenuously insisted by the defendant's attorney that the bill does not disclose sufficient reasons for equity taking jurisdiction in this case, and many citations are furnished to sustain his position.

While the margin may be narrow, yet the Master thinks that the plaintiffs' remedy at law is not complete, adequate and satisfactory and the damages sustained by plaintiffs can be much more readily and accurately found by a Master than by a jury.

For this reason he thinks that this court should assume jurisdiction to decree an account if the defendant should fail to return the stock as above suggested.

The question of costs remains to be disposed of.

In 1885, there was prepared in the office of the defendant's attorney a paper by which, as above stated, all this controversy was referred to Wm. Bakewell, this agreement to refer was not drawn by Mr. Rodgers himself, but was supposed by him to include all matters included in the present case. After the referee had taken the testimony of all parties and the case had been argued before him it was discovered that the agreement of reference was not broad enough to include the facts connected with the execution of the contracts, and the submission of the referee was revoked by the defendant.

There is no question raised about the right to thus revoke the reference, but as the parties had gone to the expense and trouble of once trying the case, and the agreement of reference was that of the defendant, it would seem equitable to the Master that the costs of this case should be put on the defendant.

To this report both the plaintiffs and the defendant filed exceptions. The following are the defendant's exceptions:

1. The Master erred in not finding that the plaintiffs had a full, complete and adequate remedy at law, and in not recommending that the bill be dismissed on that ground.

2. The Master erred in recommending that the costs be paid by defendant.

The court, EWING, P. J., filed the following opinion, sustaining the defendant's exceptions.

The plaintiffs have no ground for complaint as to the Master's findings of fact. The evidence fully sustains the Master. He has taken the most favorable view for the plaintiffs that the testimony warrants.

Had he found, from the evidence, that the insertion of the word " carbons " in the supplementary contract of 31st March, 1883, and the procuring it to be signed by the president of defendant company in the face of the resolution of the board of 3d February, 1883, without calling his attention to the change, was a fraud on the defendant company and not a mere mistake, the court could not have said that his conclusion was error.

The Master finds that there has been no violation of the terms of this contract, by defendant, in regard to making commutators as charged in the tenth section of the bill.

This leaves the complaint substantially this, namely: That on March　　, 1883, the defendant, for a consideration of the surrender to it of $5,500 of its stock held by plaintiffs, agreed, *inter alia*, to buy its supply of carbons from the plaintiffs, and that it has violated its contract by purchasing its supply, in part, elsewhere, to the loss and damage of the plaintiffs, and that it intends to continue to so violate its contract. They

allege a loss of profits on the manufacture and sale, and the encouragement of rivals in business.

The fact that rivals may be encouraged in business is not a meritorious complaint on which to found a claim for relief in equity, under the circumstances of this case. The profits lost by the failure of defendant to purchase its carbons from the plaintiffs, or the damages, by reason of the alleged breach of contract, are not more difficult of ascertainment in a common law action than are most cases of unliquidated damages. It is probable that one suit at law for damages would end the contentions, even if after an adverse decision to defendant in such a suit it should continue to purchase its carbons from other than the plaintiffs, we are unable to see any such damage to plaintiffs as to require the interposition of a court of equity to decree a specific performance of the contract, or to enjoin the defendant from making such purchases. The question of jurisdiction in equity, under the circumstances of this case, seems to us to be ruled by Grubb's Appeal, 9 Norris, 228 ; Clark's Appeal, 12 P. F. S., 450 ; Koch, P. B. Appeal, 12 Norris, and kindred cases, and ruled against the plaintiff.

The circumstances of this case and the relations that Mr. Ridall occupies as to the defendant, are not such as to require a court of equity to exercise any discretionary power in the case.

For the reason that the plaintiffs have an adequate remedy at law, the bill of complainants must be dismissed; costs to be divided one half to plaintiffs, one half to defendant.

The following decree was accordingly entered :·

And now, July 3d, 1886, this cause having been fully argued before the court by the counsel of the respective parties, and the cause fully considered, it is now ordered, adjudged and decreed that the plaintiffs' bill be and is hereby dismissed, without prejudice, and that the parties, plaintiffs and defendant, each pay one half the costs of this suit.

The plaintiffs thereupon took this appeal assigning the decree for error, *inter alia.*

*W. A. Woodward* for appellants.—When the circumstances show that the justice of the case is not fully met by the remedy at law, equity will entertain jurisdiction, even to compel restoration of personal property: Beasley *v.* Allyn, 12 W. N. C., 90; Palmer *v.* Graham, 1 Pars. Eq., 479.

The jurisdiction is not dependent upon the form of the contract, but the court seeks to be satisfied that there is a binding agreement for a specific object: Story on Eq. Juris, sec. 715.

The ground of jurisdiction, whether it is as to realty or personalty, is that the "law may not, in any particular case, afford

a complete remedy:" Story's Eq., Juris. secs. 717, 719, 724, and 729.

Contracts for personal service, and acts of a special character, are enforced when the means of enforcing its decree is within the power of the court: Pomeroy's Eq., sec. 1344.

Where there has been a part performance, so that the defendant is enjoying benefits in specie, the contract will be enforced: Pomeroy's Eq., note 2, vol. 3, p. 445; Id., sec. 1401, 1404.

The true equity rule is thus laid down by Story's Eq. Jur., p. 23, sec. 33: " The remedy at law must be plain ; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate ; for if at law it fall short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete ; that is, it must attain the full end and justice of the case ; it must reach the whole mischief, and secure the whole right of the party, in a perfect manner, at the present time, and in the future, otherwise equity will interfere."

" To oust the jurisdiction in equity, the remedy at law must be as efficient, to the ends of justice, and its complete and prompt administration, as the remedy in equity : " Boyce v. Grundy, 3 Ret. U. S., 216 ; Wylie v. Coxe, 15 How. U. S., 415 ; Garrison v. Memphis Ins. Co., 19 How. U. S., 312 ; May v. Le Clare, 11 Wall, U. S., 217.

The principles are so well settled, that it is a question of fact in the particular case, whether or not it is within or without the jurisdiction of equity. The rule quoted is the touchstone for final decision of the question.

The Master held " that the plaintiffs' remedy at law is not complete, adequate and satisfactory, and the damages sustained by the plaintiffs could be much more readily and accurately found by a Master than by a jury."

*W. B. Rodgers* for appellee.—The bill should be dismissed because the plaintiff has an adequate remedy at law : Grubb's Appeal, 9 Norris, 235 ; Clark's Appeal, 12 P. F. S., 450 ; Smoltz' Appeal, 99 Pa. St., 312.

When a decree is sought for the payment of money it does not fall under the head of relief, where a recovery in damages would be an inadequate remedy : Kauffman's Appeal, 5 P. F. S., 383 ; Dech's Appeal, 7 Id., 468 ; Koch & Ballcet's Appeal, 12 Norris, 443.

There can be no relief where the only ground is discovery : Percey & Kinley, 1 Philadelphia, 505. Since the change in the rules of evidence, the reason for equity jurisdiction on the ground of discovery has ceased.

To bring the case under account, one of these things must be:

1. The accounts must be mutual and complicated; or,

2. If unilateral, discovery must be sought and must be material: Appeal Pgh. & Con. R. R. Co., 99 Pa. St., 180; Appeal Passayunk Building Asso., 2 Norris, 443.

A court of equity will not decree an account where the account is a mere matter of charge for a certain number of tons of ore, with no entries on the other side. This is the subject of an action of assumpsit: Grubb's Appeal, 9 Norris, 235; Gloniger, et al. *v.* Hazard, 42 Pa. St., 401.

A bill for specific performances of a contract is an appeal to the chancellor's conscience upon which he exercises a sound discretion.

He will not interfere if the bargain is hard or unconscionable, or the terms unequal, or the plaintiff is seeking an undue advantage: R. R. Co. *v.* R. R. Co., 7 P. F. S., 465; Eastman *v.* Plumer, 46 N. H., 464.

Nor where the contract is against public policy.

Nor when from the circumstances it is doubtful whether the party meant to contract to the extent to which he is sought to be charged: Per Lord Redesdale, in Davis *v.* Horne, 2 Sch. & Lef., 348; Willard *v.* Taylor, 8 Wall., 557.

Nor where the defence is that by fraud, surprise or mistake, the defendant executed the written agreement under a reasonable misapprehension as to the effect between the plaintiff and himself: Chitty on Contracts, 1461; Calverley *v.* Williams, 1 Ves., Jr., 210; Higginson *v.* Clowes, 15 Ves., 516; Clowes *v.* Higginson, 1 Ves. and B., 524; Wood *v.* Scarth, 1 Jur. (N. S.), 110; Webster *v.* Cecil, 30 Beatt., 62; Western R. R. *v.* Babcock, 6 Met., 346.

The principle is this: that it is against conscience for a man to take advantage of the plain mistake of another, or at least that a court of equity will not assist him in doing so. Where the fraud, mistake or surprise cannot be established without evidence, equity will allow a defendant to a bill for specific performance to support his defence, founded upon any of these grounds by evidence *dehors* the record: Manson *v.* Black, 6 Hare, 447.

It requires much less strength to resist a bill for specific performance than it does to sustain such bill: Dalzell *v.* Crawford, 1 Pars. Cases, 37; Farley *v.* Stokes, 1 Id., 429.

Mr. Justice GORDON delivered the opinion of the court January 3d, 1887.

The plaintiffs' bill was summarily dismissed by the court below, on the ground that they had an adequate remedy at law.

In this it overruled the Master, who, though finding the facts in favor of the defendant, yet was of the opinion that the bill should be retained until the stock, which the defendant had received from the Brush company, in execution of the contract of the 31st of March, 1883, should be returned.

In this he was undoubtedly correct, and the court erred in not adopting his recommendation. Equitable jurisdiction does not depend on the want of a common law remedy, for whilst there may be such a remedy it may be inadequate to meet all the requirements of a given case, or to effect complete justice between the contending parties, hence, the exercise of chancery powers must often depend on the sound discretion of the court: Bierbower's Appeal, 11 Out., 14. So a bill may be sustained solely on the ground that it is the most convenient remedy: Kirkpatrick v. McDonald, 1 Jo., 387. But the bill, in this case, prays for the specific execution of the contract of the 31st of March, 1883; a contract which, according to the finding of the Master, the defendant company might elect either to affirm or rescind. If it chose to affirm, an account became necessary, for there was no convenient method of ascertaining the number of carbons bought from other parties than the Brush company, except by the books, bills and other evidence within the power of the defendant. If, on the other hand, a rescission should be preferred, then it is clear that the plaintiffs must be restored to the status which they occupied at the date of the contract. In execution of this contract, and as part of its consideration, the Brush company assigned to the Allegheny company some fifty-five hundred dollars' worth of the stock of the latter, and we agree with the Master, that this bill ought not to be dismissed until that stock is returned.

But the above narrative establishes the fact that the common law remedy of covenant cannot be used, in any view of this case, to adjust the rights of the parties, and administer specific justice. Whilst this remedy has been, and may still be used to enforce the performance of a contract, yet a more inconvenient and inefficient one could scarcely be devised, so that since our courts have been clothed with equity powers it is seldom or never resorted to. We have, therefore, no hesitation in agreeing with the learned Master, that the plaintiffs' remedy at law is not complete, adequate and satisfactory; that the damages sustained by them can be better found and adjusted by a master than by a jury, and that the defendant should be put to an account should it fail to return the stock.

With reference to the Master's finding of facts, we cannot undertake to say that he has committed any serious error, though we would not go as far as the court has done in saying that he might well have found that the word "carbons" had

been fraudulently inserted, by the plaintiffs, in the contract of 1883.

It certainly was enough to say, that not being in accord with the resolution of February 3d, and having been inadvertently overlooked at the time of signing, it was not to be regarded as part of the defendant's contract. Nor is it altogether clear that the mistake thus found was of such a character as should rescind the contract, for if the defendant's officers executed it without examination, notwithstanding the opportunity that was afforded them of so doing; if it was, indeed, as the Master reports, laid before the defendant's directors before its execution, and if there was no fraud on part of the plaintiffs, we can scarcely see how the mistake can be attributed to anything but the supine negligence of the defendant's agents. This, however, being a matter for the consideration of the court below, we forbear to dwell upon it.

> The decree is now reversed at the costs of the appellee, and the court is directed to proceed to a final decree.