M. F. Steigerwalt, D. H. Bartholomew and Gustavus Groezinger *v.* Jeremiah Rife, J. L. Metzger, Fred. Judith, M. M. Barton, Leonard J. Ganss, Henry Smeych. J. H. Metzler, John I. Hartman and Milton C. Hartman, administrators of Lewis S. Hartman, Anthony F. Kaul and A. Wayne Bitner. Appeal of Henry Smeych.

*Contribution among cosureties—Equity jurisdiction.*

An agreement, whereby individual stockholders pledged their interests in the corporate property and franchises and also their individual personal credits to indemnify certain of their number, who gave their note to secure funds for corporate purposes, if the said note or any renewal thereof was not paid by the corporation, makes the parties thereto cosureties; and, a final renewal note having been taken up by its makers equity jurisdiction attaches, at the suit of the payors, to compel contribution to adjust the conflicting and contingent interests which require specific provisions of a remedial nature in order to effect complete justice between all parties interested in the joint enterprise.

*Equitable jurisdiction vests to avoid unnecessary litigation.*

Where unnecessary and multiplied litigation may be prevented by proceedings in equity, and all questions affecting the different persons and interests can be adjudicated in such proceeding, this in itself is sufficient to vest equitable jurisdiction:

A provision for the final payment of a loan represented by a note, imports a consideration when made with all the parties interested, when it related to a common enterprise, and was made for their joint benefit.

A consideration exists where by the agreement one party is benefited or the other party is injured.

The relation of cosureties is one of mutual trust and confidence, and from this springs their liability to contribute equally to the payment of the principal debt. In equity the solvent sureties are liable to contribute inter se as to the whole amount.

Argued Nov. 18, 1898. Appeal, No. 109, Oct. T., 1898, by Henry Smeych, from decree of C. P. Lancaster Co., sitting in equity, to Equity Docket, No. 3, p. 173, directing payment of one seventh of the amount of a promissory note. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Hearing on bill, answer and proofs.  Before LIVINGSTON and BRUBAKER, JJ.

It appears from the record that the proceedings were on behalf of the plaintiffs to compel contribution by the defendants to the payment of a promissory note of $5,000, upon which, it was alleged, the said sum of money had been borrowed for the use of the Mt. Lewis Mining & Milling Company, in which all the parties, plaintiffs and defendants, were stockholders.  After partial hearing and there being some evidence that only four of the defendants were solvent, three of them voluntarily paid one seventh each of the demand, and the case went on to final hearing as to defendant, Smeych, against whom there was a decree for the payment of one seventh.  The agreement upon which the suit was based was as follows :

"LANCASTER, PA., May 11, 1893.

"Whereas, M. F. Steigerwalt, John L. Metzger, John H. Metzler, A. F. Kaul, Leonard J. Ganss, Fred. Judith, M. M. Barton, D. H. Bartholomew, Henry Smeych, Gustavus Groezinger, Lewis S. Hartman, Jeremiah Rife and A. Wayne Bitner are owners of and in possession of the Snow Storm Mill, together with the new machinery therein in La Plata County, Colorado (the mill being held under· a lease) and the amalgamating process to be used in the treatment of ores in said mill, with the exclusive right to use said process in said County of La Plata, aforesaid, each of the above named persons' interest being one-thirteenth in said property, and said persons being the Board of Directors of a company known as the Mount Lewis Mining & Milling Company, incorporated under the laws of the State of Colorado; and

"Whereas, The said Mount Lewis Mining and Milling Company was in need of funds for the payment of miners, laborers, provisions and other material required in their operations at the mill and mines in said County.of La Plata, and all the funds of the company having been used, it was ordered by the Board of Directors of the said Mount Lewis Mining and Milling Company that a loan of five thousand dollars be made for ninety days, and that each of the individual members of the Board pledge their proportionate share or interest in the property and franchises in said La Plata County as security to indemnify

the persons who make themselves responsible for the loan so authorized; and

" Whereas, Jeremiah Rife, M. F. Steigerwalt, John L. Metzger and John H. Metzler made a note, payable to the order of Gustavus Groezinger, Treasurer, ninety days after date, from May 10, 1893, at the People's National Bank of Lancaster, and the same was discounted at the said People's National Bank and the proceeds thereof were used for the payment of operating expenses of the said Mount Lewis Mining and Milling Company, hereinbefore stated.

" Now it is therefore mutually agreed by and between all the persons herein named that providing the note above referred to or any renewal thereof be not paid by the said Mount Lewis Mining and Milling Company, nor should the interest of each one herein named he holds in the property of the company taken with the interests of all the others which is held by them therein be sufficient to pay said note or sum of five thousand dollars, then each of the undersigned members agrees each for himself to pay any part of said sum that may not be paid, as hereinbefore provided."

. (This agreement was signed by all the plaintiffs and defendants.)

The court below filed the following decree:

And now, May 25, 1898, this case came up finally to be heard before both judges of the court on bill, answer and replication, and testimony taken thereon on the trial and filed of record, and thereupon the court does finally order, adjudge and decree that by virtue of the agreement, exhibit " A," the defendants, Jeremiah Rife, John H. Metzler, John L. Metzger, M. M. Barton, Frederick Judith and Henry Smeych, are liable to contribute to the plaintiffs their equitable proportionate shares of the sum paid by the said plaintiffs, to wit: $5,003.75, with interest thereon from January 23, 1896; that Henry Smeych, being one of the seven solvent signers of said agreement, exhibit " A," pay to the plaintiffs one seventh of the sum paid by them, $5,003.75, with interest thereon from January 23, 1896, to wit: the sum of eight hundred and fourteen and $\frac{82}{100}$ dollars ($814.82); and that, upon such payment by the said Henry Smeych, he be entitled to contribution to the extent of his proportionate share from the insolvent and absent signers

of said agreement; and it is further ordered, adjudged and decreed that he, the said Henry Smeych, pay one seventh of the costs that accured in this proceeding, up to the date of the dismissal of the bill against Anthony F. Kaul, Leonard J. Ganss and Lewis S. Hartman's administrators, to wit: April 22, 1897, and that he pay all costs that have accrued thereon from said date.

Henry Smeych appealed.

*Errors assigned* among others were (1) in entering decree against Henry Smeych for the payment of $814.82.   (2) In not finding as a matter of fact that no consideration passed to the said Henry Smeych for the execution of the agreement. (3) In not finding as a matter of law that a court of equity had no jurisdiction in the case.   (9) In holding that Henry Smeych, being one of the seven solvent signers of said agreement, is liable to contribute to the plaintiffs one seventh of the sum paid by the plaintiffs, $5,003.75, with interest thereon from January 23, 1896.

*B. F. Davis* and *George Nauman*, for appellant.—No one is bound by an agreement in writing to protect others against the payment of a note which they have previously made and the proceeds of which have been used, and the making of which note he did not authorize and for the agreement to protect the others he received no consideration.

Nor is there such a thing as a floating or portable agreement, by which if A agrees to protect B, C and D upon their making of a note, that he shall be afterwards liable to F and G, who, of their own accord, take the place of C and D.

A court of equity has no jurisdiction to enforce contribution in such a case, even if there be liability.

As Paxson, C. J., said in Grubb's Appeal, 90 Pa. 228, "a bill in equity is not a panacea. and orders and decrees in equity where there is no jurisdiction are simply coram non judice," and in the matters enumerated in the act of assembly in which a court of equity has jurisdiction the research of counsel for the appellant has failed to find any authority for a proceeding of this nature.

*William H. Keller*, of *Steinmetz & Keller*, and *J. Hay Brown*, of *Brown & Hensel*, for appellees.—There was a sufficient con-

sideration for the signing of the agreement: Hartman v. Danner, 74 Pa. 36.

The signing of each party to the agreement was a consideration for the signing of the others: Creamery Co. v. Hillis, 3 Pa. Superior Ct. 527; Brady v. Elliott, 181 Pa. 259.

Equity has jurisdiction in matters relating to contribution: Bispham's Principles of Equity, sec. 328, 329; 1 Story's Equity Jurisprudence, sec. 495; Johnston v. Price, 172 Pa. 427; Wesley Church v. Moore, 10 Pa. 273.

In various matters equity has concurrent jurisdiction with law: Adams's Appeal, 113 Pa. 449; Bierbower's Appeal, 107 Pa. 14; Brush Co's Appeal, 114 Pa. 574.

The decisions of the courts of this state also recognize the jurisdiction of equity in contribution: Horbach v. Elder, 18 Pa. 33; Croft v. Moore, 9 Watts, 451; Pomeroy v. Sterrett, 183 Pa. 17.

OPINION BY SMITH, J., January 18, 1899:

In May, 1893, all the parties, plaintiffs and defendants, were the directors and stockholders of the Mount Lewis Mining and Milling Company, a corporation operating in the state of Colorado, all having equal interests. The company needed money promptly, and on May 10, 1893, four of the directors drew their note to the order of the treasurer for $5,000. This note was discounted at the Peoples' National Bank of Lancaster, Pa., and the proceeds were passed to the credit of the treasurer, who paid it out for the use of the company. Subsequently all the parties entered into an agreement which, after reciting their joint and equal ownership of certain mining and milling property situate in La Plata county, Colorado; the need of funds by the company for the payment of operating expenses, provisions and material; and the loan of $5,000 which had been effected as aforesaid, it was agreed " that each of the individual members of the board pledge their proportionate share or interest in the property and franchises in said La Plata county as security to idemnify the persons who make themselves responsible for the loan as authorized;" and whereas four of the directors and stockholders (naming them) raised the said $5,000 as above stated, and the money was used for the payment of operating expenses of the company, it was " therefore mutually

agreed by and between all the persons herein named that providing the note above referred to nor any renewal thereof be not paid by the said Mount Lewis Mining and Milling Company, nor should the interest of each one herein named he holds in the property of the company taken with the interests of all the others which is held by them therein, be sufficient to pay said note or sum of five thousand dollars, then each of the undersigned members agrees each for himself to pay any part of said sum that may not be paid, as hereinbefore provided." This agreement was signed by all the parties in interest including the appellant. The note was renewed from time to time until September 18, 1895, when the last renewal note was given. This was taken up at maturity by three of the then makers, only one of whom had signed the original note. The company became hopelessly insolvent, its property was sold under executions, and the plaintiffs brought this action in equity to compel contribution by the members who had signed the agreement. Pending this proceeding and before final decree, each of those who were solvent, except the appellant, paid to the plaintiffs one seventh of the amount paid by them on taking up the note, and the case was proceeded with against the other defendants. The court found as a fact that but seven of the parties to the agreement were solvent, and directed that each of these seven bear one seventh of the sum paid by the plaintiffs,— $5,003.75, with interest thereon from January 23, 1896, and decreed specially that the appellant, Henry Smeych, pay one seventh, with the reservation that upon such payment he be entitled to be reimbursed to the extent of his proportionate share of whatever may in the future be realized from the insolvent and absent signers of said agreement. A decree was entered to this effect. Exceptions were filed to the finding, the opinion and the decree, and it is assigned for error here that (*a*) the court erred in entering the decree against the appellant; that (*b*) no consideration passed to the appellant for the execution of this agreement; that (*c*) the court had no equity jurisdiction of the case, and that (*d*) appellant was in any event liable only for his proportionate share of the note. namely, one seventh of one third,—this on the ground that but one of the plaintiffs had signed the original note, and the appellant could be held to have contracted with him alone and not with the other plaintiffs.

The principal ground of complaint relates to the jurisdiction of a court of equity, and the binding efficacy of the agreement. We have no doubt about the jurisdiction in equity.    The fact that conflicting and contingent interests are involved, requiring specific provisions of a remedial nature, in order to effect complete justice between all the parties interested, is sufficient, in our judgment, to give jurisdiction in equity of the adjustment of this joint enterprise.    Indeed, the remedy in equity seems to be entirely appropriate and most adequate in this case.    The rights of the parties as between themselves can best be ascertained and protected in this proceeding.    That equity affords the most convenient remedy and the one which will reach all the phases of the controversy most effectively is undeniable, and this has been held sufficient to sustain the proceeding by bill: Electric Co.'s Appeal, 114 Pa. 574.    It is also undeniable that in this proceeding all questions affecting the different persons and interests can be adjudicated here, thus preventing unnecessary and multiplied litigation.    And this is in itself sufficient to vest equitable jurisdiction : Johnston v. Price, 172 Pa. 427 ; McGinn v. Benner, 180 Pa. 396.    It is unnecessary to cite other authorities, or to extend the discussion on this question, as we have no doubt of the equity jurisdiction of the court below.

It is equally. clear that the agreement bound the defendant to contribute his proportionate share of the loss incurred from failure of the company to meet the note or " any renewal thereof."    This agreement was not specifically made with the signers of the first note.    It was a provision for the final payment of the loan represented by the note, made with all the parties interested; it related to their common enterprise, and was made for their joint benefit.    It was not restricted to the parties who signed the original note, nor to any particular renewal note, but to "any renewal thereof."    It is admitted that the note paid by the plaintiffs was given in renewal of the first one, and was the last of a series which formed a continuous chain of renewals.    It would seem, therefore, that the note in suit comes literally within the meaning of the agreement.    But in addition to this, it must be considered that all the parties were equally interested in the business of the company, and they chose to conduct its affairs without regard to its solvency

or corporate limitations under the law. The assets employed in its prosecution, its franchises, and the individual rights and liabilities under the laws of Colorado, were all embraced in their scheme of prosecution, and were subordinated to their aim and plans for carrying on the work on a larger scale than the limited scope and means of the company would permit. In order to do this, it became necessary to increase the working capital on their individual responsibility, and the loan for which the note was given was procured in furtherance of this pur- pose, and was afterward secured by the agreement. This agree- ment was freely entered into, and it is admitted that the money borrowed was honestly expended so far as the associates were concerned. By the agreement all were equally bound for the loan and were equally benefited. It is not pretended that the plaintiffs would or could derive any more advantage from the loan than might accrue to their associates in the agreement. Why should they be required to bear more than an equal share of the common burden? In this instance equality is equity ; equality of interest, of advantage and of liability. The parties to the agreement may be treated as cosureties in law, with like remedy for contribution and equalization of the common burden. It would be grossly unjust to relieve some of the parties, on an unsubstantial technicality, and hold the others to a literal compliance, when in pursuance of the agreement and in reliance upon it the latter took the necessary steps to make it effective : Pomeroy v. Sterrett, 183 Pa. 17. But there is no legal ground for the appellant's contention that he received no consideration for his signature to the agreement. The loan was for the common benefit and was employed in the common busi- ness. Technically, the money may have been expended in payment of the company's debts, but this was done by virtue of the agreement for that purpose. Presumably this debt was se- cured by the later obligation, on the faith of the promise in the agreement to pay the renewal note. A consideration exists where by the agreement one party is benefited or the other party is injured. Here the consideration combines this double aspect. The appellant was benefited and the plaintiffs wore injured by the agreement to which they all were parties.

There can be no question as to the right of contribution. The relation of cosureties is one of mutual trust and confidence,

and from this springs their liability to contribute equally to the payment of the principal debt.  All who embark in a common undertaking must share equally the losses and the profits, in the absence of a stipulation to the contrary.  And where these matters are brought into a court of equity for adjustment, the solvency and insolvency of the parties may be inquired into for the purpose of equalizing the burden among those who are able to bear it.  "In equity the solvent sureties are liable to contribute inter se as to the whole amount:" Note to Smith's Leading Cases (9th ed.), 292, and cases there cited.  Granting that the makers of the present note were not makers of the first paper, it is admitted that the last was given in renewal of the first, and for the same debt.  The agreement in terms binds the parties to pay this renewal on failure of its payment by the company.  The spirit, purpose and effect of that agreement clearly embrace the note in suit, and can be excluded only by a strained and unnatural construction.  It was executed in good faith for a lawful purpose, and like reasons call for its lawful enforcement.

There is nothing further in the assignment of errors calling for discussion.  They are all overruled and the decree of the court below is affirmed.