# Lafean et al. *v.* American Caramel Co., Appellant.

*Corporations—Purchase of stock of another company—Contract to employ manager—Resolution, when binding—Consideration.*

1. Where a corporation purchases and receives the stock and plant of another company under an agreement which provided for the employment of the manager of the latter company and certain other persons for a period of years, it is bound by the contract of employment.

2. Where a corporation has by its board of directors resolved to employ its president for a period of years at a stated salary, under circumstances stated above, it is bound by the resolution, although a formal contract was not thereafter executed.

*Equity—Jurisdiction—Averments of bill—Existing conditions— Most convenient remedy—Fraud—Cross-bill—Curing defect of bill —Multifariousness—Discretion of court.*

3. The question whether a court of equity has jurisdiction must be determined by the face of the bill, and on conditions existing when it was filed.

4. Where the rights of complainants in a bill in equity spring from the same common cause and can be determined in a single suit in equity much more conveniently than on the law side of the court, equity may assume jurisdiction because it is the most convenient remedy.

5. The filing of a cross-bill seeking affirmative relief founded on matters clearly of equitable cognizance, growing out of the subject-matter of the original bill, will cure a defect of jurisdiction under the original bill, and authorize the granting of relief to any party entitled thereto.

6. Where matters complained of in a bill in equity are of the same nature and all grow out of the same transaction, between the same parties, the bill should not be dismissed as multifarious.

7. The question of multifariousness is one of convenience, and very much within the discretion of the court.

8. To prevent a multitude of actions, equity, having assumed jurisdiction, will retain it and grant relief, although it ultimately results in a mere money decree.

*Equity—Findings of fact—Equity practice.*

9. A chancellor's findings of fact on conflicting evidence approved by the court in banc, have the same weight as the verdict of a jury and cannot be set aside except for manifest error.

Argued May 16, 1921. Appeal, No. 79, Jan. T., 1921, by defendant, from decrée of C. P. York Co., April T., 1916, No. 1, on bill in equity, in case of Daniel F. Lafean and Stuart B. Lafean v. American Caramel Co., and C. R. Weedan et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for injunction, specific performance, account, discovery, etc. Before Ross, J.

The opinion of the Supreme Court states the facts.

The court entered a decree for complainants. The American Caramel Co., defendant, appealed.

*Error assigned,* among others, was decree, quoting it.

*John A. Coyle,* with him *V. K. Keesey* and *S. R. Zimmerman,* for appellant.—There was no jurisdiction in equity: Sotter v. Boiler Works, 257 Pa. 411.

An employee cannot compel the acceptance of his services by an employer: International Auto Parts Co. v. Abel, 27 Pa. Dist. R. 735; Phila. Ball Club v. Lajoie, 202 Pa. 210; Meason v. Kaine, 63 Pa. 335.

It is irregular practice in equity to join in a bill filed by several parties causes of action which are not the same, or which are not founded on any joint right: Coatesville & D. St. Ry. v. Ry., 206 Pa. 40; Bovaird v. Seyfang, 200 Pa. 261.

A bill that comprehends two entirely distinct and different complaints is multifarious: Wetham v. R. R., 8 Phila. 92.

There was an adequate remedy at law: Roland v. Bank, 135 Pa. 598.

*Henry C. Niles,* with him *Michael S. Niles, Charles A. May* and *George E. Neff,* for appellees.—A bill is not multifarious where the matters arise out of a contract and the specific act sought to be compelled is one of the

fruits of the contract and a part thereof: Brady v. Shissler, 8 Phila. 333; Riley v. R. R., 32 Pa. Superior Ct. 579; Rafferty v. Traction Co., 147 Pa. 579; Blankenburg v. Black, 200 Pa. 629; Corbe v. Burkert, 33 Pa. Superior Ct. 317.

Where a large part of the consideration for a contract has been received it ought to be enforced specifically if possible, or, if specific enforcement is not possible, parties proposing to participate in violation of its essential terms may be enjoined: Cumberland V. R. R. v. Ry., 177 Pa. 519; Corbet v. Fuel Supply Co., 21 Pa. Superior Ct. 80; Goodwin Gas Stove Co.'s App., 117 Pa. 514; Phila. Ball Club v. Lajoie, 202 Pa. 210; Palmer v. Board of Education, 220 Pa. 568.

When equity affords the most convenient remedy, or where all questions affecting different persons and interests can be adjusted and prevent unnecessary and multiplied litigation, a bill will be sustained: Steigerwalt v. Smeych, 9 Pa. Superior Ct. 363; Conemaugh Gas Co. v. Gas Co., 186 Pa. 443; Brush Elec. Co.'s App., 114 Pa. 574; Appollo Trust Co. v. Safe Deposit Co., 31 Pa. Superior Ct. 525; Bierbower's App., 107 Pa. 14.

If equity has jurisdiction at beginning, it will not be defeated by subsequent events which render equitable relief unnecessary or improper: Conemaugh Gas Co. v. Gas Co., 186 Pa. 443; Masson & Besanson's App., 70 Pa. 26; Reeder v. Trullinger, 151 Pa. 287.

OPINION BY MR. JUSTICE WALLING, July 1, 1921:

The American Caramel Company and the Rodda Candy Company are Pennsylvania corporations, the latter located at Lancaster and the former at Lancaster and York. In 1914 the plaintiffs were officers of the Caramel Company, Daniel F. Lafean being its president and general manager and his son, Stuart B. Lafean, its secretary and treasurer. During the summer of that year parties interested in the Caramel Company discussed the advisability of its buying the stock of the Rodda Company,

and, with that end in view, one William C. Bidlack, who was interested in both companies, proceeded to obtain options upon such stock. It was planned to pay for the stock by debenture bonds of the Caramel Company, and, at a meeting of the directors of that company on October 21, 1914, the following resolution was adopted, viz: "That the president of the company be authorized to acquire the capital stock, plant and business, including all assets of every nature of the R. E. Rodda Candy Company, for $175,000 of the debenture bonds of the company now held in the treasury." Thereupon, Bidlack, with the assistance of the president, secured options on a very large majority of the Rodda Company's preferred and common stock, including that held by Lafean and his son. Lafean's management of the Caramel Company had been successful and Bidlack insisted, with the approval of the Lafeans, that in exchanging the stock for the debenture bonds there must be an agreement with the Caramel Company for the continuance of the Lafeans and himself for five years in the positions they then held. Some of the directors of the Caramel Company objected to the proposed five-year agreements and, at their meeting on December 10, 1914, the following resolution was adopted, viz: "Resolved that the president be authorized to acquire not less than $88,800 preferred stock of the R. E. Rodda Candy Company out of a total of $104,900 preferred stock outstanding at a price proportionate to the price of debenture bonds for all such stock, it being understood that not less than $104,400 of common stock of the R. E. Rodda Candy Company must accompany the preferred stock so acquired without further cost. Resolved that, in connection with and dependent upon the acquisition by this company of stock of the Rodda Candy Company, the president be authorized to make a contract with William C. Bidlack, to act as assistant to the president for three years from January 1, 1915, at a salary of $7,500 per annum, such contract to be determined at the option

of either party, in case D. F. Lafean shall cease to be
general manager of this company; and to make a con-
tract with Stuart B. Lafean, to act as manager of the
York factory for the same period at a salary of $5,000
per annum, such contract to be terminable on the same
conditions; and to make a contract with D. F. Lafean,
as general manager, for the same period at a salary of
$12,000 per annum; all such contracts to be terminated
in case this company shall cease to do business." D. F.
Lafean then and there signified his agreement to accept
the terms of the said resolution by verbally notifying
said board of directors that he would then and there ac-
cept the said contract of employment as general manager
of said American Caramel Company upon the terms of
the resolutions; and promised to try to induce Bidlack
and Stuart B. Lafean to accept the term of three years.
Bidlack insisted upon the longer term employment con-
tract, and, with the consent of all but one of the di-
rectors, President Lafean agreed to four-year employ-
ment contracts with his son, and Bidlack, upon terms as
specified in the resolutions above quoted: and, on De-
cember 31st, received from the latter, for the Caramel
Company, 919 shares of preferred stock and 1,064 shares
of common stock of the Rodda Company and delivered to
Bidlack approximately $140,000 of the debenture bonds
of the Caramel Company; such bonds being accepted at
75% of their par value. At a meeting of the directors of
the latter company on February 4, 1915, the minutes of
the December meeting having been amended so as to au-
thorize four-year employment contracts, were approved
by a three to two vote, President Lafean voting in the
affirmative. The president executed the four-year em-
ployment contracts with his son and Bidlack, as au-
thorized in the resolutions, but made no formal contract
with himself.

At the annual meeting of the Caramel Company in
March, 1915, C. R. Weedan, one of the directors, secured
control of the company and his own election as president

and the repudiation by it of the agreements with La-
fean and his son, as to employment and, despite their
protests and offers to serve, had them summarily dis-
charged from their respective positions. Meantime, Bid-
lack surrendered his four-year contract and was reëm-
ployed as general manager for a like term. The Caramel
Company has never returned or offered to return the
stock it obtained in the manner above stated. In secur-
ing options, etc., on the stock, Lafean and Bidlack re-
quired funds and made a loan of $34,547 from a bank
for which they gave their personal note, with $60,000 of
the debenture bonds as collateral. This transaction was
open when the bill was filed, but has been adjusted.

Lafean and his son filed their bill in this case, soon
after their discharge, setting out a history of the trans-
action, averring fraud, collusion, etc., and praying for
a specific performance of the employment contracts, an
accounting, general relief, etc. Defendant demurred to
the bill and, on that being overruled, filed an answer and
later a cross-bill charging fraud against Lafean and his
son, the former in making secret and unlawful profits in
securing the Rodda Company stock and the latter in the
misappropriation of funds received by him as treasurer
of the Caramel Company. A responsive answer was
filed to the cross-bill and replications having been filed
to the respective answers, the case went to trial and a
large amount of testimony was submitted. The chan-
cellor found all the material facts in favor of the plain-
tiffs in the original bill and against the plaintiff in the
cross-bill. Through the death of one of defendant's coun-
sel, and the election of another to the Superior Court,
the final adjudication of the case was long delayed.
Meantime, the terms of the so-called employment con-
tracts had expired and practically all other questions,
except that of fraud, breach of contract and money dam-
ages resulting therefrom, had dropped out of the case.
The chancellor found in effect that Lafean and his son
had acted throughout honestly and in good faith, and

that the repudiation of their employment contracts, after securing the Rodda Company stock on the faith thereof, was a fraud on the part of defendant; that the discharge of Lafean and his son was done fraudulently and in bad faith and caused them damages to the extent of their respective salaries for three years, at the rate named in the resolution above quoted, with interest; and accordingly recommended a decree in their favor. He also recommended a dismissal of the cross-bill. The court in banc, after disposing of exceptions, entered a final decree in accordance with the findings and recommendations of the chancellor; from which the defendant in the original bill brought this appeal.

An examination of the record, including the ninety-five assignments of error, has failed to disclose cause for reversal. The value of the debenture bonds depended upon the efficiency of the management of the Caramel Company, and those who owned and controlled the Rodda Company stock and were about to exchange it for the bonds had the right to stipulate who the manager should be and also for the employment contracts. The Caramel Company was not bound to accept the terms, but, having done so, it cannot retain the fruits of the bargain and repudiate the obligations.

The question of jurisdiction must be determined from the face of the bill (Adams's App., 113 Pa. 449), and on conditions existing when it was filed. Here, sufficient appeared to warrant a chancellor in assuming jurisdiction, especially the averments of fraud and collusion and the apparent want of an adequate and convenient legal remedy: Wagner v. Fehr, 211 Pa. 435; Bierbower's App., 107 Pa. 14. The right of the Lafeans to relief depended so largely upon the question of fraud that assumpsit would not seem to be an adequate remedy. Their rights grew out of the same fraudulent acts, in other words, sprang from the same common cause (Cumberland Valley Railroad Company's App., 62 Pa. 218) and could be determined in a single suit in equity much

more conveniently than on the law side of the court; and the former may assume jurisdiction because it is the most convenient remedy: Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, 43; Conemaugh Gas Co. v. Gas Co., 186 Pa. 443; Corbe v. Burkert, 33 Pa. Superior Ct. 317, 320; Steigerwalt v. Rife, 9 Pa. Superior Ct. 363. The unusual and complicated nature of the case as it appeared when suit was brought pointed to equity as the proper forum. Moreover, the Caramel Company's cross-bill seeks affirmative relief on the ground of fraud, and also asks for an accounting, both subjects of equity jurisdiction, which alone would be sufficient. "The filing of a cross-bill seeking affirmative relief, founded on matters clearly of equitable cognizance, growing out of the subject-matter of the original bill, will cure a defect of jurisdiction under the original bill, and authorize the granting of relief to any party entitled thereto": 21 Corpus Juris 506. That conclusion appears to be entirely sound, although, as disclosed in the supplemental brief furnished by the able counsel for appellant, there seems to be some conflict in the authorities.

The matters here complained of are of the same nature and all grow out of the same transaction, between the same parties, and we are not convinced that the bill should have been dismissed as multifarious. The question of multifariousness is one of convenience and very much within the discretion of the court: See opinion of the late Judge ALLISON in the City of Philadelphia v. Trustees of the Gas Works, 12 W. N. C. 477, 484, and cases there cited.

To prevent a multitude of actions, equity, having assumed jurisdiction, will retain it and grant complete relief, although it ultimately results merely in a money decree: Holden v. Bernstein Mfg. Co., 232 Pa. 366; Allison and Evans's App., 77 Pa. 221; Masson's App., 70 Pa. 26; Appeals of Ahl, 129 Pa. 49; Head v. Meloney, 111 Pa. 99.

The chancellor has found that President Lafean made no profit, secret or otherwise, in the purchase of the Rodda Company stock, therefore the question of his right to do so need not be considered.

The resolution of December 10th was adopted by a majority vote, excluding that of Daniel F. Lafean, and the Caramel Company, having received the benefit thereof, is bound by it, although a formal contract was not thereafter executed with him: Sotter v. Coatesville B. Works, 257 Pa. 411. As the court below awards plaintiffs less than three years' salary, the validity of the resolution extending the employment agreements to four years, and adopted February 4, 1915, on the deciding vote of Lafean, is not important; for if invalid it would not impair the former resolution.

As the terms fixed in the employment contracts have expired, the question as to whether specific performance thereof could have been decreed, under the unusual facts of this case, has become academic and need not be decided.

A chancellor's findings of facts on conflicting evidence, approved by the court in banc, have the same weight as the verdict of a jury and cannot be set aside except for manifest error: Scranton v. Scranton Coal Co., 256 Pa. 322.

We have referred to the Caramel Company as the defendant, because the decree was entered only against it, although its president, general manager and treasurer were originally joined as defendants.

The decree is affirmed and the appeal is dismissed at the costs of appellant.