Helmig, Appellant, *v.* Rockwell Manufacturing Company.

22

Argued March 20, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*Paul Ginsburg,* for appellant.

*J. Wray Connolly,* with him *W. S. Moorhead, Jr., J. M. Feeney, Jr.* and *Moorhead & Knox,* for appellee.

*David McNeil Olds,* with him *Carl E. Glock* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 22, 1957:

The instant controversy involves two separate appeals from orders of the Court of Common Pleas of Allegheny County—one in an assumpsit, the other in a trespass action. The same appellant and factual situation were before this court in the prior appeal, reported at 380 Pa. 305, 111 A. 2d 118. Mr. Justice CHIDSEY, in the prior appeal, painstakingly stated the facts. Because of this we will restate only those facts which comprise the essence of the present controversy.

In 1948 appellant, a steel broker, undertook to furnish appellee Rockwell Manufacturing Company[1] with steel sheets to be used in Rockwell's business. Appellant agreed to obtain steel ingots for Rockwell and then secure the services of a rolling mill to convert these ingots into steel sheets. In return Rockwell agreed to pay appellant a commission of $35.00 a ton for the finished product. Appellant obtained the requisite ingots and then attempted to secure rolling time from appellee Bethlehem Steel Company[2] for the necessary conversion into steel sheets. Bethlehem refused to roll the ingots, giving as its reason its policy against entering into any conversion agreement in which middlemen were involved. Rockwell then cancelled its agreement with appellant which cancellation is essentially the basis for all three subsequent appeals—the initial and the two present appeals—to this court.

After the cancellation of the agreement appellant sued Rockwell in assumpsit and this court affirmed

---

[1] Hereinafter referred to as "Rockwell".

[2] Hereinafter referred to as "Bethlehem".

the lower court's entry of judgment n.o.v. against appellant: *Helmig v. Rockwell Manufacturing Company,* supra.

On September 23, 1955, 17 months after the judgment of the lower court was entered, appellant filed a petition for new trial for after-discovered evidence which requested, as amended, that either a new trial be granted or, in the alternative, that the judgment n.o.v. be vacated and the verdict of the jury in favor of appellant be reinstated. By order of May 23, 1956 the lower court dismissed appellant's petition and the first of these appeals (No. 6 March Term, 1957) followed.

On August 25, 1955, prior to his petition for a new trial, appellant brought an action in trespass, naming both Rockwell and Bethlehem as defendants, and alleging a conspiracy between them to defraud him of his commission by means of the cancellation of the agreement of 1948. The lower court, by order of May 23, 1956, granted the motions of both appellees for judgment on the pleadings and the second of these appeals (No. 7 March Term, 1957) followed.

The grounds upon which the lower court denied appellant's petition for a new trial or opening of the judgment n.o.v. in the assumpsit action are: (1) that the petition was filed too late and (2) that the after-discovered evidence which was the basis for the petition was available at time of trial, and was neither legally nor factually sufficient to justify appellant's prayer for relief.

The court below was correct in its exposition of the law pertaining to new trials. A petition for a new trial must be filed at the same term in which final judgment is entered, with exceptions allowable only where the court has retained control over the verdict or where there is extrinsic fraud, clerical error, or the

like. Whether or not a new trial will be granted to let in new evidence is a matter for the trial court and this court will not reverse unless there has been a clear abuse of discretion. *Philadelphia Suburban Transportation Co. v. DiFrancesco et al.,* 362 Pa. 326, 66 A. 2d 254; *Kingsdorf v. Frank Gamburg, Inc.,* 147 Pa. Superior Ct. 84, 24 A. 2d 140; *McFadden v. Hanft,* 166 Pa. Superior Ct. 261, 70 A. 2d 450; 6 Standard Pennsylvania Practice, §99, p. 350. In the instant case appellant's petition was not filed until 17 months after the lower court entered judgment and none of the allowable exceptions are herein applicable.

The lower court also accurately discussed the principles of law applicable to after-discovered evidence and astutely applied those principles to the evidence presented by the appellant below, holding that this evidence could have been obtained at the original trial by the exercise of reasonable diligence on the part of appellant, that its only effect would be to impeach the credibility of Rockwell's evidence as to Bethlehem's policy against dealing with intermediaries, and that this evidence of Bethlehem's acts in the years 1951-1953 was irrelevant to the policy of that company in 1948. No authorities need be cited for the proposition that any evidence, to be admissible, must be relevant to the issues of the case. And, as the court below stated: "It is well established that in order to grant a new trial on the basis of after-discovered evidence, the evidence must have been discovered since the trial and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply cumulative or merely to impeach the credibility of a witness. Hornick v. Bethlehem Mines Corp., 310 Pa. 225 (1933)." On the basis of the record before us we can find no abuse of the lower court's discretion in refusing to grant a new trial or vacate the judg-

ment n.o.v. on the basis of appellant's alleged after-discovered evidence.

However, appellant seeks to fit still a different string to his bow. Our understanding of appellant's position is that the after-discovered evidence became unnecessary in the court below because, by Rockwell's alleged admission that Bethlehem's policy against dealing through middlemen was irrelevant and immaterial, "the sole basis for the judgment n.o.v. had been eliminated, leaving the Court no alternative but to vacate it."

The answer to this contention by appellant is plainly and simply that Rockwell admitted no such thing. In its answer to appellant's petition for a new trial because of after-discovered evidence Rockwell repeatedly asserted that the *reason* for Bethlehem's refusal to roll appellant's ingots is irrelevant and immaterial; that the whole crux of the case in assumpsit is Bethlehem's refusal to deal through an intermediary regardless of its reasons therefor and appellant's consequent inability to perform his part of the agreement. By what can only be termed obtuse reasoning appellant has seized upon these averments to argue that Rockwell has admitted and agrees that the *policy*—not Bethlehem's *reasons for the policy*—is irrelevant and immaterial. Appellant has misconstrued the plain meaning of Rockwell's language and has gone on to reason that the judgment n.o.v. and this court's affirmance of that judgment n.o.v. was based on a ground that Rockwell now admits to be false.

We conclude that Rockwell used the best defense available to it in this action in assumpsit and that appellant has fallen far short of proving, either by his "after-discovered" evidence, or by his claim that Rockwell now admits its defense in this case heretofore was false, that "the lower court erred in not holding that a fraud upon the court had been perpetrated."

Consequently, we hold that the lower court committed no error in dismissing appellant's petition: (1) because the petition was not timely filed; (2) because the evidence upon which it was based cannot qualify as after-discovered evidence and (3) because the crux of Rockwell's defense stands at present just as it stood at trial and upon the first appeal, i.e. that Bethlehem's refusal to deal through appellant, regardless of its reason therefor, prevented appellant's performance of its part of the agreement and justified Rockwell's cancellation thereof.

Appellant's second appeal is from the lower court's order granting the motions of both Rockwell and Bethlehem for judgment on the pleadings in his action in trespass against them for damages arising from an alleged conspiracy to defraud him of his commissions under his agreement with Rockwell. The lower court held: (1) that appellant's claim against Rockwell is barred under the doctrine of res judicata and (2) that appellant's action is barred by the Statute of Limitations which was raised as a defense by both parties.[3]

We find no error in the lower court's ruling that the trespass action was barred as against Rockwell by the entry of the lower court judgment in the assumpsit action which judgment was affirmed by this court in *Helmig v. Rockwell Manufacturing Co.*, supra. Appellant's position that there is no final judgment upon which the doctrine may operate is untenable. The finality and conclusiveness of the original judgment cannot be affected by a petition for new trial filed 17 months thereafter and subsequent to the affirmance of that judgment by this court. And, as Rockwell aptly points out in its brief, appellant's petition for a new

---

[3] The period of limitations in a trespass action is 6 years. Act of March 27, 1713, 1 Smith Laws, 76, §1; 12 PS 31.

trial was denied and his appeal from that order does not operate as a supersedeas.

In *Wallace's Estate,* 316 Pa. 148, 153, 174 A. 397, this court stated: "Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court." Appellant argues, however, that the lower court erred in invoking the doctrine of res judicata in this trespass action because the parties are different, the nature of the suit is different, the recovery sought is different and the issues are different and have not yet been tried, or determined. As support for his argument he cites *Fisher Building Permit Case,* 355 Pa. 364, 367, 368, 49 A. 2d 626, in which the following language was quoted from *Siegfried v. Boyd,* 237 Pa. 55, 59, 85 A. 72: "In order to make a better res adjudicata there must be a concurrence of the four following conditions: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made."

Appellant's position, then, is that application of the doctrine of res judicata is effectively precluded because he brought this action in trespass for conspiracy while his first action was in assumpsit, because Bethlehem was also named as a defendant in this action while the first action was brought against Rockwell alone, and because in this action he seeks to recover

exemplary damages in addition to the loss of his commissions under the cancelled agreement which he claimed in the assumpsit action.

Upon comparison of the instant action with appellant's prior action in assumpsit it becomes immediately apparent that his contentions must fail. The acts complained of in both actions are identical—his position is now, as it was before, that Rockwell wrongfully cancelled its agreement, depriving him of his commissions. Appellant demands the same recovery in this action ($164,500) that he demanded in the prior action. The only difference is that in the instant action he also claims exemplary damages. Appellant would inevitably call the same witnesses and present exactly the same evidence in this second action. In such a situation this court must pierce the technical differences between the two actions, and having done so of necessity find that beneath the camouflage net of the second action stands the first—the identical action which was previously litigated to the fullest extent.

The words of Mr. Justice KEPHART, in *Hochman v. Mortgage Finance Corporation et al.*, 289 Pa. 260, 263, 137 A. 252, are particularly apposite here: "It is a general principle of public policy, making for the general welfare, for the certainty of individual rights, and for the dignity and respect of judicial proceedings, that the doctrine of res adjudicata should be supported, maintained and applied in proper cases. Nor should its application be restricted by technical requirements, but a broad view should be taken of the subject, having always in mind the actual purpose to be attained. The rule should not be defeated by minor differences of form, parties or allegations, when these are *contrived only to obscure the real purpose,—a second trial on the same cause*[4] between the same parties. The

---

[4] Emphasis throughout supplied.

thing which the court will consider is *whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights.* If this be the fact, then the matter ought not be litigated again, nor should the parties, by a shuffling of plaintiffs [or, as in this case, defendants] on the record, or by change in the character of the relief sought, be permitted to nullify the rule." See also: *Federal Land Bank of Baltimore v. Putnam et al.,* 350 Pa. 533, 39 A. 2d 586; *Slater v. Slater,* 372 Pa. 519, 521, 522, 94 A. 2d 750; *Goldstein v. Ahrens,* 379 Pa. 330, 334, 108 A. 2d 693.

We hold that appellant's action in trespass, as against Rockwell, is barred by the doctrine of res judicata, the present action involving no more than an attempted retrial of the very issues litigated in the prior action.

The lower court ruled that since Bethlehem was not a party to the first action and was not in any way affected by that action the defense of res judicata is not available to it in this trespass action. However, we are of the opinion that the previous adjudication of the issues raised in this action constitutes a bar to appellant's action against Bethlehem because Bethlehem's liability is based solely upon the act of Rockwell in cancelling the agreement of 1948. The basis for this opinion will be found in the Restatement, Judgments, §99, which provides: "A valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort or breach of contract by such person, whether or not the other person has a right of indemnity."

It will readily be seen that our holding under this rule does not require in a strict sense proof of res judicata. The general rule has always been that no party can take advantage of a judgment or decree if he would not also have been concluded by it if the same judgment or decree had been against his interest; it is usually stated that the doctrine applies only to parties to the previous adjudication and their privies: *Chandler's Appeal,* 100 Pa. 262; *Walker v. City of Philadelphia,* 195 Pa. 168, 45 A. 657.

It has been recognized, however, that a broader ground exists. Thus, in *Bigelow.v. Old Dominion Copper Co.,* 225 U. S. 111, 127, 32 S. Ct. 641, 56 L. Ed. 1009, it was said: "It is a principle of general elementary law that the estoppel of a judgment must be mutual. [citing cases] . . . . An apparent exception to this rule of mutuality had been held to exist where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts when sued by the same plaintiff." The court then cited *Portland Gold Mining Co. v. Stratton's Independence,* 158 F. 63, 68, wherein it was said: ". . . it is settled by repeated decisions that the general rule that one may not have the benefit of a judgment as an estoppel unless he would have been bound by it had it been the other way is subject to recognized exceptions, one of which is that in actions of tort, such as trespass, if the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way. And we think it could not well be otherwise, for, when the plaintiff has litigated directly with

the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible. To such a case the maxim, 'Interest reipublicae ut sit finis litium,' may well be applied." Much the same reasoning, in which we agree "There is manifest propriety, and no injustice", was also used in *Bruszewski v. United States,* 181 F. 2d 419, and *Adriaanse v. United States,* 184 F. 2d 968.[5]

Applying the Restatement doctrine to the facts of the instant case it would indeed be an anomalous situ-

---

[5] The facts of these cases, it should be noted, differ from those of the instant case in that the United States was named as sole defendant in the second suit after a prior suit had failed against a different party. In the instant case, however, Bethlehem was made *codefendant* of Rockwell, Rockwell was the sole defendant in the original case, and Bethlehem's responsibility is entirely dependent upon Rockwell's culpability which, as we have already seen, was proven nonexistent in the prior case. It will readily be seen that the instant controversy presents a stronger basis for the application of the doctrine of the Restatement than do either of the cited cases or any of the earlier cases which apparently contemplate an exception to the doctrine of mutuality of estoppel only where the relation between the defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnities. In fact, the instant case is much closer on its facts to *Slater v. Slater*, supra, where, in the second action an additional defendant was named because she and the defendant in the original action held property as tenants by the entireties. This court held that the first action determined the identical issue presented by the second action, the mere addition of a codefendant was not sufficient to defeat the defense of res judicata by the original defendant and the plaintiff was also barred from proceeding against the codefendant.

ation if Bethlehem could be held liable, as a co-conspirator of Rockwell, for conspiring to produce a wrongful breach of contract when it has been conclusively decided by the lower court and this court that Rockwell did not wrongfully breach its contract with appellant. If the doctrine did not protect Bethlehem in this situation, and it should have to go to trial to defend against this attempt to hold it vicariously liable without Rockwell also present as a defendant, the result would be unconscionable.

In view of our conclusions in this matter we deem it unnecessary to discuss the question whether appellant's complaint pleads a good cause of action for conspiracy against Bethlehem and/or Rockwell.

It is necessary, however, that we consider the applicability of the Statute of Limitations because the lower court held that it constitutes a bar to this action and appellant contends that this was error. The period of limitations in this action, as stated in note 3, supra, is 6 years. The instant action was initiated in August, 1955, more than 6 years after the agreement was cancelled by Rockwell in April, 1948.

Appellant, however, states that "It is hornbook law that the Statute of Limitations does not begin to run until after the commission of the last act in the conspiracy." Thus, by alleging a "continuing conspiracy" from the cancellation of the contract to the present time, appellant asserts the right to avoid the bar of the statute. Apparently, according to appellant's reasoning, the statute will never begin to run until appellees have either lost, surrendered or compromised their defenses in any action appellant chooses to bring against them. Assuming, *purely arguendo,* that a conspiracy did exist, we are utterly at a loss to understand how such conspiracy could conceivably be considered to have "continued" for this length of time.

A conspiracy is actionable only when it produces an overt act which injures the complaining party and the lower court properly held that the only overt act alleged by appellant was the cancellation by Rockwell of its agreement with appellant. The sole basis for appellant's claim for damages is that act and that act alone. No authority need be cited for the proposition that in such a situation no continuing trespass is shown. The lower court committed no error in holding that this action is barred by the Statute of Limitations.

Orders affirmed. Costs are to be paid by appellant.

Mr. Justice COHEN took no part in the consideration or decision of this case.