**CAMBIST FILMS, INC., a corporation, Appellant,**

v.

**Robert W. DUGGAN et al.**

**No. 72–1205.**

United States Court of Appeals, Third Circuit.

Submitted Jan. 9, 1973.

Decided March 13, 1973.

David F. Alpern, Alpern & Alpern, Pittsburgh, Pa., for appellant.

Norman J. Cowie, Pittsburgh, Pa., for appellees; Thomson, Rhodes & Grigsby, Pittsburgh, Pa., of counsel.

Before McLAUGHLIN and VAN DUSEN, Circuit Judges, and GREEN, District Judge.

## OPINION OF THE COURT

**PER CURIAM:**

This appeal is taken from the dismissal as to all defendants of a complaint which sought damages against the district attorney and the chief of detectives of Allegheny County, (Robert Duggan and Edward G. Crone, respectively) and certain detectives, for the seizure by the detectives of films which they considered to be "obscene". Plaintiff Cambist here was the owner of distribution rights to a motion picture called "The Female". The film was seized from certain movie theaters that were showing it. The film was taken under the following circumstances. Detectives were sent to view the film at different locations. One, sent by his superiors, viewed all but 15 minutes, believed it violated Pennsylvania criminal statutes, arrested the manager of the theater and took custody of the film. Another, acting under orders of an assistant district attorney, viewed the film and decided that it violated criminal statutes of Pennsylvania. He also arrested the theater manager and took custody of the film. A third detective acted in response to a complaint from local police. After viewing a substantial portion of the film, he too concluded that it violated Pennsylvania criminal statutes. He took custody of the film and placed the manager under arrest. Plaintiff instituted an action alleging the illegal seizure of the film. The district court, 298 F.Supp. 1148, ordered defendants Duggan and Crone to return the film prints to plaintiff, after holding that the facts presented were not sufficient to determine the films as obscene. This order was complied with. Cambist then instituted this common law action for damages which it claimed resulted from the illegal search and seizure of the film.

It is generally settled principle of law that a district attorney is a "quasi-judicial officer", Commonwealth, ex rel. Specter v. Martin, 426 Pa. 102, 232 A.2d 729 (1967), and in the performance of duties imposed on him by

law, he cannot be subjected to personal liability through a common law action. Pennsylvania law has, as a general principle, that quasi-judicial officers cannot be subjected to liability, civil or criminal, for any of their judicial acts, no matter how erroneous, so long as they act in good faith. McNair's Petition, 324 Pa. 48, 187 A. 498 (1936). See discussion 63 Am.Jur.2d § 289. Federal courts have similarly held. See Bauers v. Heisel, 361 F.2d 581 (3 Cir. 1966). Cambist here refers to the language in Bauers v. Heisel which implied that not all acts of a district attorney should be immune. That case stated that " * * * the immunity of a prosecutor, however, is not without limitation; it is not absolute. The immunity of judges, from which immunity of prosecutors is derivative, does not extend to acts which are clearly outside their jurisdiction." This discussion in Heisel pertains to cases involving alleged violations of the Civil Rights Act, not common law tort actions. In such cases Heisel recognized a distinction that needs be observed between excess of jurisdiction, a circumstance which would not allow liability, as opposed to the clear absence of all jurisdiction over the subject matter, which could result in liability for the judicial official in Civil Rights circumstances. Robichaud v. Ronan, 351 F.2d 533 (9 Cir. 1965); Lewis v. Brautigam, 227 F.2d 124 (5 Cir. 1955). Even considering the possible civil rights problem here, no liability can be attributed to the prosecutor in our present case because he was not acting where he clearly had no jurisdiction. He was investigating an alleged violation of the laws of Pennsylvania, which was within his powers and duties, and the actions which he proscribed in this instance were such as he felt necessary to the enforcement of those laws. Obviously, this case in no way approaches the "clear absence of jurisdiction" standard required for possible liability on the part of the prosecutor.

As to liability on the part of the officers, a consideration of Restatement of Torts 2d, § 121, Comment 1, appears necessary. That states "A peace officer making an arrest without a warrant is protected in every case when he acts under a reasonable mistake as to the existence of facts which, under the rule stated in this Section, justify an arrest without a warrant. On the other hand, no protection is given to a police officer who, however reasonably, acts under a mistake of law other than a mistake as to the validity of a statute or ordinance." We must then determine what facts justify an arrest without a warrant. The rule in Pennsylvania is that "an officer may make an arrest without a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence." Commonwealth of Pennsylvania v. Garrick, 210 Pa.Super. 124, 126, 232 A.2d 8 (1967). In the matter before us, the detectives watched the film after entering the premises as business visitors, and decided that on the facts as they viewed them, the film was obscene and in violation of 18 P.S. § 4524. Therefore, they seized the films and arrested the theater managers. Even though it was later found in Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3 Cir. 1969) that these facts were not sufficient to classify this as an obscene film, it goes without question that the facts and circumstances available to the officers at the time of seizure were such as to provide an ordinary person with a reasonable belief that an offense was being committed. It was, at most, a mistake of fact by the officers in their actions, but this does not make them liable in tort under any standard. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. Police officers are not expected to have a complete knowledge of the intricacies of case law as appellant might try to have us hold when he cites Smith v. Crumlish, 207 Pa.Super. 516, 218 A.2d 596 (1966). The officer is only expected to act in accord with the facts and circumstances of the given situation with which he is confronted.

Finally, for reasons previously discussed in respect to a district attorney's quasi-judicial status, he is not liable under these facts for actions of his agents and detectives. As noted previously, there is no liability for the prosecutor or the detectives, and there is no basis for attempting to create liability merely because one party here is the agent of the other.

The judgment of the district court will be affirmed.

VAN DUSEN, Circuit Judge (concurring).

I concur in the result reached by the foregoing opinion, but differ in the reasoning to be used to support the judgment for the Chief of Detectives of Allegheny County [1] and the detectives working under him.

The plaintiff, Cambist Films, Inc., previously instituted a suit (Civil No. 69–300) in the District Court for the Western District of Pennsylvania on March 17, 1969, against Robert W. Duggan, District Attorney for Allegheny County, Edward G. Crone, Chief of Detectives of Allegheny County, Joseph M. Loughran, District Attorney for Westmoreland County, and Edward Gordon, Chief of Detectives of Westmoreland County.[2] The plaintiff in that complaint only sought equitable relief; an injunction against the defendants and the return of the prints of its film. See Cambist Films, Inc., Inc. v. Duggan et al., 298 F.Supp. 1148 (W.D.Pa.1969), rev'd in part, 420 F.2d 687 (3d Cir. 1969).

On June 2, 1969, after the decision in the district court, the plaintiffs brought the present action against, among others, Crone and named Allegheny County detectives.[3] In the instant case, the plaintiff now claims damages.

■■■ Where a plaintiff has had an opportunity to seek damages in its earlier action, its failure to combine all of its claims, legal as well as equitable, which could have been asserted and concluded in the earlier action, is fatal and the county detectives were entitled to a judgment in their favor on the basis of the doctrine of *res judicata*.[4] For, as is stated by Professor Moore:

"  .  .  .  where law and equity have been united and a litigant can present all his grounds for relief, whether legal or equitable, inconsistent, alternative or hypothetical, in a single action he should be held to have but one cause of action and final

1. The transcript of the pre-trial conference makes clear that the Chief of County Detectives was ill in the hospital during all the events which are the subject matter of this action.

2. Paragraph 6 of the plaintiff's complaint in Civil Action No. 69–300 alleged that Crone, "through [his] duly authorized agents, servants, employees or officers," acting under color of state law in violation of 42 U.S.C. § 1983 "seized and confiscated a print of said film ['The Female']" contrary to the requirements of the First, Fourth and Fourteenth Amendments.

3. Detectives Daily, Joller and Kumer were not named in the first suit, but are referred to in paragraph 6 of the complaint in Civil Action No. 69–300. See note 2 *supra*.

4. It is, of course, recognized that whether a plaintiff should be precluded by his earlier judgment by the doctrine of *res judicata* "depends upon the extent to which legal and equitable remedies have been merged in the state where the judgment is rendered." Hennepin Paper Co. v. Fort Wayne Corrugated Paper Co., 153 F.2d 822, 826 (7th Cir. 1946) ; Restatement of Judgments, § 66 (1942). However, it is quite clear that in the federal system actions in law and equity have been united into "one form of action to be known as 'civil action'." Rule 2, F.R. Civ.P. ; see e. g., Wright, Law of Federal Courts, § 67 (2d ed. 1970). And, even if one looks to Pennsylvania law, a court of equity may, once it assumes jurisdiction, grant complete relief including a judgment for money. Lafean v. American Caramel Co., 271 Pa. 276, 114 A. 622, 624 (1921) ; see also Helmig v. Rockwell Manufacturing Co., 389 Pa. 21, 131 A.2d 622 (1957).

judgment on the merits is res judicata as to all matters, legal and/or equitable, in support or defense of that cause of action. One fair day in court is enough."

1B Moore's, Federal Practice, § 0.410 [1], at 1156–57 (2d ed., 1965); see also Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972).

The plaintiff has had its fair day. Two of four principal defendants from the previous suit were named in the instant action. The previous complaint arose out of the same factual context as the instant complaint. Compare complaint in Civil Action No. 69–300, Appellees' App. at 1b, with complaint filed June 2, 1969 (Civil Action No. 69–665, W.D.Pa.), Appellant's App. at 7a. As stated by Judge Aldisert recently in *Gambocz, supra,* at 841–842:

> "Use of the adjective 'collateral' to characterize this form of estoppel grows out of the fact that the bar of the prior adjudication is not interposed directly, by parties to the prior suit, but indirectly, by new defendants, strangers to the earlier action. However, the conceptual basis of such an estoppel is closer to that of pure *res judicata* than pure 'collateral estoppel,' because the bar is interposed on the theory that the second action is but an attempt to relitigate the *same cause of action,* although the names of the defendants may be different. The distinction between this form of estoppel, *res judicata,* and 'pure' collateral estoppel has been frequently emphasized:
>
> > Thus, under the doctrine of *res judicata,* a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the *same cause of ac-*

*tion.* Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of *issues actually* litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

Lawlor v. National Screen Service *Corp., supra,* 349 U.S. [322] at 326, 75 S.Ct. [865] at 867 [, 99 L.Ed. 1122] (emphasis supplied). See also Judge Goodrich's opinion in *Lawlor,* before this court, 211 F.2d 934, 935 (3d Cir. 1965).

\* \* \* \* \* \*

"We previously determined that the essential allegations of the second complaint parallel those of the first. Moreover, what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time. We conclude that the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action and, therefore, it is barred by application of the Bruszewski [v. United States, 181 F.2d 419 (3d Cir. 1950)] doctrine."

Consequently, I would affirm the judgment of the district court as to Crone, Daily, Joller and Kumer on the basis of the principles of *res judicata* and collateral estoppel.

Judge GREEN concurs in this opinion.