TOTAL CONTROL, INC., Plaintiff,

v.

DANAHER CORPORATION, et al. Defendants.

No. Civ.A. 04–CV–4151.

United States District Court, E.D. Pennsylvania.

March 1, 2005.

---

Mitchell A. Kramer, Kramer & Kramer, LLP, Rydal, PA, for Plaintiff.

Herbert I. Rothbart, Chicago, IL, Michael J. Torchia, Semanoff, Ormsby, Greenberg & Torchia LLC, Jenkintown, PA, for Defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

## I. Introduction

Plaintiff, Total Control, Inc. ("Total Control") brings this action in diversity against

defendants Danaher Corporation, Danaher Industrial Controls Group, Danaher Controls Corporation, and Dynapar Corporation (collectively, "Danaher"). In this, the second of two related actions between the same parties, Total Control alleges that Danaher violated the Illinois Sales Representative Act, 820 ILCS 120 ("ISRA"), when it willfully and wantonly failed to pay timely commissions to Total Control. Total Control seeks exemplary damages under the ISRA, as well as prejudgment interest, fees and costs. Before me now is Danaher's motion to dismiss the complaint and in the alternative to strike the jury demand. For the reasons that follow, I will grant the motion and dismiss the complaint with prejudice.

## II.  Background [1]

Danaher is a group of interlocking companies that manufactures digital equipment and controls.[2] First Amend. Compl. ¶ 10, *Total Control, Inc. v. Danaher Corp.*, No. 02–CV–668 (E.D.Pa. filed Feb. 8, 2002) (*"Total Control I"*). On June 30, 1986, Total Control entered into an Agency Agreement (the "Agreement") with Danaher, whereby Danaher appointed Total Control as its exclusive sales agent in a territory comprising Eastern Pennsylvania, Maryland, Southern New Jersey, and the District of Columbia, as well as for certain of Danaher's accounts in Virginia. *Id.* at ¶ 12. The Agreement provided that its "validity, effect and construction ... shall be governed by the laws of the State of Illinois, except insofar as the laws of the United States of America are clearly applicable hereto." *Id.* at ¶ 16. The parties operated under this Agreement, as modified on occasion and renewed annually,

until Danaher terminated the Agreement, effective December 31, 2001. *Id.* at ¶ 17–22. At the time of termination, Danaher owed Total Control commissions for sales made in Total Control's exclusive territory during the operation of the Agreement but for which it had failed to pay Total Control. *Id.* at ¶ 23, 43. Danaher also owed Total Control commissions for sales in Total Control's exclusive territory that occurred in the 90 days following the effective date of termination because Danaher gave only 30 days notice of termination, rather than the 120 days required by the Agreement. *Id.* at 28. On May 4, 2004, following a more than two-year period of bad faith negotiation on Danaher's behalf regarding the impact that acceptance of partial payment would have on Total Control's legal claims, Danaher paid Total Control a small subset of the outstanding commissions. *Id.* at ¶ 29–41.

Total Control filed suit in this court against Danaher on February 8, 2002. The complaint included four counts: 1) breach of contract; 2) tortious interference with business relationships; 3) violation of the Pennsylvania Commissioned Sales Representative Act, 43 Pa. Stat. Ann. § 1471 et seq. (2004) ("PCSRA"); and 4) unjust enrichment. *Id.* at ¶ 24–42. Total Control later elected not to pursue the tortious interference and unjust enrichment claims. *Total Control, Inc. v. Danaher Corp.*, 2004 WL 1878238, *1 n. 1, 2004 U.S. Dist. LEXIS 16689 (E.D.Pa. Aug. 18, 2004).

On August 18, 2004, on Danaher's motion for reconsideration of an earlier summary judgment opinion, I granted summary judgment on Total Control's claim

---

**1.** I accept all of the plaintiff's allegations as true and attribute all reasonable inferences in its favor.

**2.** As has been the convention of the parties and the Court throughout the litigation, I will refer to each and all of the defendants as "Danaher," regardless of which particular corporate entity is at issue.

under the PCSRA. *Id.* at 2004 WL 1878238, *4, 2004 U.S. Dist. LEXIS 16689, *12. I noted that Pennsylvania's sales representative act, unlike the Illinois equivalent, and, indeed, unlike twenty-six of the twenty-seven analogous acts in other states, limited its protections to those soliciting orders "from retailers." *Id.* at 2004 WL 1878238, *2, 2004 U.S. Dist. LEXIS 16689, *6–7. Because there was no genuine issue of material fact as to whether Total Control solicited orders from retailers, I granted summary judgment for Danaher on the PCSRA claim. *Id.* at 2004 WL 1878238, *4, 2004 U.S. Dist. LEXIS 16689, *12.

On September 1, 2004, three business days before the start of trial in *Total Control I*, Total Control filed its complaint in the instant litigation.[3] *Total Control, Inc. v. Danaher Corp.*, No. 04–CV–4151 (E.D.Pa. filed Sept. 1, 2004) (*"Total Control II"*). Total Control's complaint in this action contains only one count, violation of the Illinois Sales Representative Act. (Compl.¶ 24–46.) Total Control alleges that Danaher's failure to pay timely commissions, "the subject of [*Total Control I* ]," was "deliberate, willful and wanton, exhibiting vexations behavior," (*id.* at ¶ 42, 44), and that Total Control only discovered the full extent of Danaher's conduct in the course of discovery in *Total Control I*. (*Id.* at ¶ 45.)

Danaher brought Total Control's initiation of *Total Control II* to my attention on September 3, 2004, one business day before the start of trial in *Total Control I*, when it submitted a letter requesting that I consider an "Emergency Motion to Consolidate and Reschedule the Trial Pursuant to Rule 42." Total Control joined and stipulated to the letter-motion. Letter at 1, *Total Control I* (Sept. 3, 2004). I chose not to consolidate and reschedule the trial.

A seven-day jury trial in *Total Control I* began on September 7, 2004. The jury returned a verdict in favor of Total Control on its breach of contract claim in the amount of $1,485,061. Civil Judgment Order, *Total Control I* (Sept. 15, 2004). Danaher filed a motion to amend the judgment or in the alternative for a new trial, which I denied earlier today. Memorandum and Order (March 1, 2005), *Total Control, Inc. v. Danaher Corp.*, No. 02–CV–668 (E.D.Pa. filed Feb. 8, 2002).

### III. Legal Standard

■ A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A court may dismiss a complaint only if it appears that the plaintiff "could prove no set of facts that would entitle him to relief." *Alston v. Parker*, 363 F.3d 229, 233 (3d. Cir.2004). A court must accept all of the plaintiff's allegations as true and attribute all reasonable inferences in his favor. *Id.* "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir.1997). However, I take judicial notice of the record of the prior proceeding between these parties. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n. 3 (3d Cir.1988); *Bieg v. Hovnanian Enterprises, Inc.*, 1999 WL 1018578, *2, 1999 U.S. Dist. LEXIS 17387 (E.D.Pa. Nov. 9, 1999).

### IV. Discussion

■ Danaher's primary argument for dismissal is that the instant action is

---

**3.** Total Control did not, at that late date, seek leave to amend its complaint in *Total Control I* to include a claim under the ISRA.

barred by res judicata, or to be precise, claim preclusion. Federal common law governs the claim-preclusive effect that must be given to a judgment rendered by a federal court sitting in diversity. *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). However, absent incompatibility between state law and federal interests, "the federally prescribed rule of decision [is] the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* In the instant case, therefore, federal common law governs the preclusive effect that must be given to the judgment in *Total Control I*. Because application of Pennsylvania preclusion law is not incompatible with federal interests in this case,[4] federal common law calls for the incorporation of the Pennsylvania law of preclusion.

▉ "Res judicata, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action." *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309, 313 (1995). Under Pennsylvania law, "[t]here must be a concurrence of four conditions" for a successive claim to be barred under claim preclusion.[5] *In re Iulo*, 564 Pa. 205, 766 A.2d 335, 337 (2001). Claim preclusion applies when there is: 1) identity of issues; 2) identity of causes of action; 3) identity of persons and parties to the action; and 4) identity of the quality or capacity of the parties suing or being sued. *Id.* The parties only dispute whether the second factor, identity of the causes of action, is met.

"Res judicata applies not only to the claim actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Balent*, 669 A.2d at 313; *Glynn v. Glynn*, 789 A.2d 242, 249 (Pa.Super.2001) ("Res judicata encompasses not only those issues, claims or defenses that were actually raised in the prior proceeding, but also those which could or should have been raised but were not.") "As to the identity of cause of action, rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to various legal claims." *In re Jones & Laughlin Steel Corp.*, 328 Pa.Super. 442, 477 A.2d 527, 531 (Pa.Super.1984); *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3rd Cir.1999).

Total Control argues that *Total Control II* encompasses a separate cause of action from *Total Control I* because the first action was a breach of contract action and the second is a statutory claim for exemplary damages. It argues that while the first action established that Danaher failed to pay Total Control timely commissions, the second action concerns Danaher's motives in so doing. Finally, Total Control argues that it could not have brought a claim under the ISRA in the first action because it only learned the extent of Danaher's willful and malicious conduct in the course of discovery in the first action.

▉ Total Control's position is without merit. First, Total Control did, in fact, bring a statutory claim for exemplary

---

4. Indeed, as the parties acknowledge, application of general federal preclusion principles would lead to the same result as application of Pennsylvania, or even Illinois, law.

5. A basic prerequisite for the application of claim preclusion is that there be a valid final judgment on the merits. *Balent*, 669 A.2d at

313. As I denied Danaher's motion to amend the judgment or for a new trial in *Total Control I* earlier today, the judgment is unequivocally final. The jury verdict and my earlier partial dismissal on summary judgment were likewise "on the merits."

damages in *Total Control I.* Total Control sought exemplary damages under the nearly, but, of course, not quite identical statute, the PCSRA. I granted summary judgment on that claim because I found that Total Control had not met its burden of producing evidence showing that it solicited orders from retailers, as the PCSRA requires. That decision was on the merits and at this date is undisputedly final. Thus, Total Control's false distinction between the current statutory claim and the claims in the prior action fails to hold water.

More importantly, even had Total Control failed to bring a statutory claim in the first action, it is abundantly clear that both claims derive from identical underlying events. Both stem from Danaher's failure to pay Total Control commissions on sales occurring between 1986 and the first ninety days of 2002. Indeed, Total Control does not seek any new principal damages whatsoever, only exemplary damages based on the judgment in the prior suit.

■ To recover under the ISRA, a plaintiff must show that a principal failed to provide timely payment of commissions to a sales representative. If the plaintiff proves that the principal "willfully and wantonly" refused to pay, courts will award exemplary damages. *Gramercy Mills, Inc. v. Wolens,* 63 F.3d 569, 573 (7th Cir.1995). Total Control alleges that Danaher's failure to pay Total Control timely commissions, which Total Control candidly admits in its complaint was "the subject of the Prior Action," was "deliberate, willful and wanton, exhibiting vexatious behavior." (Compl.¶ 42, 44.) Thus, the critical component of Total Control's claim under the ISRA, Danaher's failure to pay timely commissions, was actually litigated and decided in *Total Control I.*

■ Total Control appears to be under the mistaken impression that every ele- ment of a claim must have been actually litigated and decided in prior litigation in order for the new claim to be precluded. In this respect, Danaher appears to confuse the doctrines of collateral estoppel and claim preclusion. *See Balent,* 669 A.2d at 313. For purposes of the identity of cause of action requirement under the doctrine of claim preclusion, it is sufficient if the new claim could or should have been raised in the prior litigation. *E.g., Glynn,* 789 A.2d at 249. Total Control's only purportedly new allegation is that Danaher acted with a particular state of mind when it failed to pay the commissions at issue in *Total Control I,* and for that, Total Control now seeks exemplary damages. But "[d]istinct causes of action do not arise merely because the motivations alleged ... differ." *Gregory v. Chehi,* 843 F.2d 111, 118 (3d Cir.1988). Nor is it "significant that the relief obtainable ... varies to some degree." *Id.* And it is clear that "the addition of a request for exemplary damages does not create a separate cause of action in Pennsylvania." *Id.* (citing *Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 131 A.2d 622 (1957)); *see also Kellen Co. v. Calphalon Corp.,* 54 F.Supp.2d 218, 222 (S.D.N.Y.1999) (noting that a breach of contract claim for failure to pay commissions is "virtually the same claim" as one seeking relief under the New York Sales Representative Act).

As to Total Control's assertion that it could not have brought an action under the ISRA in *Total Control I* because it only learned of the extent of Danaher's conduct in the course of that litigation, this argument is belied by the party's own conduct. First, as stated previously, Total Control brought a nearly identical claim under an equivalent Pennsylvania act and alleged "willful" conduct in its first filed complaint. Compl. ¶ 32, *Total Control I* (Feb. 8, 2002). While Total Control does allege a certain

amount of bad faith conduct on Danaher's part that occurred after the initiation of *Total Control I*, that conduct concluded well before trial in *Total Control I* and could not form the basis for a new claim in any event. In particular, Total Control alleges that Danaher acted in bad faith throughout its negotiations over the impact that Danaher's payment of a subset of outstanding commissions would have on Total Control's pending legal claims. (Compl. at ¶¶ 29–41.) But Total Control acknowledges that the bad faith refusal to pay concluded on May 4, 2004, roughly four months before trial began in *Total Control I.*[6] Moreover, a continuing refusal to pay past commissions is not a separate transaction or occurrence from the original failure to pay and thus cannot form the basis for a separate claim. *See McAnany v. The Home Ins. Co.,* 1992 WL 301585, *3–4, 1992 U.S. Dist. LEXIS 16172 (E.D.Pa. Oct. 15, 1992); *Sosebee v. State Farm Mutual Automobile Ins. Co.,* 164 F.3d 1215, 1216 (9th Cir.1999) (prior breach of contract action bars new action based on post-filing bad faith); *Simon Wrecking Co. v. AIU Ins. Co.,* 2004 WL 3015309, *5–6, 2004 U.S. Dist. LEXIS 26087 (E.D.Pa. Dec. 29, 2004) (continuing bad faith refusal to pay insurance not a new act for statute of limitations purposes).

Furthermore, it is clear that Total Control, however unwisely in hindsight, consciously chose not to pursue a claim under the ISRA for strategic reasons, thereby waiving any potential claim under that statute. At oral argument on the summary judgment motion in *Total Control I,* the following exchange occurred regarding application of the PCSRA:

THE COURT: All right, let's start off, why are you applying Pennsylvania law? This is contracted under Illinois law, not under Pennsylvania law. You're claiming it under Pennsylvania law.

MR. KRAMER [counsel for Total Control]: That's correct....

.        .        .        .        .

THE COURT: ... [T]here is an issue of whether ... you're entitled to [recovery] under the Pennsylvania Act.

MR. KRAMER: If we're not, we're probably entitled to it under the Illinois Act.

THE COURT: Which is very different. Which does not provide for double.

MR. KRAMER: Right....

.        .        .        .        .

THE COURT: Well, of course, you do have—you get lawyer's fees under the Illinois Act, so there are certain things you get under the Illinois Act that would certainly help you....

Hearing at 32–33, *Total Control I* (June 18, 2004).

The posture of this case is thus clear. After strategically opting to seek recovery under the PCSRA, but failing, Total Control has now returned to court for a second chance under the nearly identical Illinois statute. "This case is well illustrative of the need and purpose of the doctrine of res judicata." *Jones v. Costlow,* 354 Pa. 245, 47 A.2d 259, 264 (1946). The "nub" of both controversies, *see Gregory,* 843 F.2d at 118, was ably stated by counsel for Total Control: "The case is simply about a failure to pay commissions prior to the date of termination and then for ninety days thereafter...." Hearing at 3, *Total Con-*

---

**6.** Total Control never sought leave to amend its complaint to include a claim under the ISRA. In the interests of judicial economy, I denied defendant's request, which was sub- mitted one business day before the start of trial in *Total Control I,* to consolidate the two cases and reschedule the trial.

*trol I* (Oct. 3, 2003). The second action is no different and therefore must be barred.

## V. Conclusion

For the reasons discussed above, Total Control's new action is barred by claim preclusion and must be dismissed. I need not consider Danaher's motion in the alternative to strike the jury demand.

### *ORDER*

AND NOW, this _____ day of March 2005, it is **ORDERED** that defendants' motion to dismiss plaintiff's complaint (Docket # 8) is **GRANTED**. This matter is **DISMISSED WITH PREJUDICE**. The Clerk's Office shall mark this case closed for statistical purposes.